THE MAYOR &c. OF THE CITY OF NEW-YORK *vs.* BAILEY and others.

An action on the case for *malfeasance* will lie against a corporation.

The degree of care which a party who constructs a dam across a stream is bound to use, is in proportion to the extent of the injury which will be likely to result to third persons, provided it should prove insufficient. *Per* WALWORTH, *Chancellor.*

It is not enough that the dam is sufficient to resist ordinary floods. If the stream is occasionally subject to great freshets, those must likewise be guarded against.

Such a measure of prudence is required in such cases as a discreet person would use if the whole risk were his own. *Per* WALWORTH, *Chancellor.*

A municipal corporation is responsible for the negligence or unskillfulness of its agents and servants when employed in the construction of a work for the benefit of the city or town subject to the government of such corporation.

The owner of real estate is responsible for the negligent acts of persons employed

in making erections upon it for his benefit, though the relation of master and serv-ant does not exist between such owner and the persons so employed. *Per* WAL-WORTH, *Chancellor,* and HAND, *Senator.*

An action on the case lies against the corporation of the city of New-York for injuries occasioned to third persons by the negligent and unskillful construction of a dam on the Croton river, being a part of the works built pursuant to the act for supplying the city with pure and wholesome water, (*Stat.* 1834, *p.* 451 ;) it ap-pearing that the title to the land upon which the same was erected was vested in the corporation, pursuant to the *fourteenth* section of the act.

The *thirteenth* section of the act above mentioned, providing a summary appraise-ment of damages for certain injuries, is not applicable to cases where the injury was the result of negligence or unskillfulness on the part of the persons employed on the works authorized by that act.

ON error from the supreme court. The defendants in error brought an action of trespass on the case in the court below against the corporation of the city of New-York for negligence, in constructing the dam across the Croton river, where that stream is diverted for the purpose of supplying the city of New-York with water, in so unskillful a manner, that on the oc-casion of a freshet in the river occurring after its erection, the dam was swept away, and the plaintiffs' buildings and property situated below on the stream were carried off and destroyed by the passing down of the water which had been accumulated by means of the dam.

The cause was twice tried, at the Westchester circuit, before RUGGLES, late C. Judge. On the first trial the plaintiffs were nonsuited by the direction of the judge, but the nonsuit was set aside by the supreme court upon a case. For a statement of the pleadings and a report of the case as then presented, together with the opinion of the court upon that occasion, see 3 *Hill,* 531.

On the second trial, which took place in June, 1843, the plain-tiffs, for the purpose of shewing the relation which the defen-dants sustained to the enterprise of constructing the Croton Water Works, of which the dam in question was a part, and their agency in the work, gave in evidence the several acts of the legislature, and the reports, resolutions and other documents proved by them on the former trial, and mentioned in the report in 3d Hill.

The plaintiffs also proved their ownership of a dam and wire

manufactory and a number of other buildings, and a quantity of land situated on the banks of the river below the dam of the Croton Water Works, and of a large amount of personal property in and about the buildings; and that on the 8th day of January, 1841, there was a high freshet in the river, during which a large portion of the upper dam was carried off, and a very great body of water which had been accumulated in the pond flowed down upon the plaintiffs' buildings and carried them away, destroying much personal property and doing a large amount of damage. They also gave some evidence respecting the construction of the dam, and as to former floods in the river, and of the comparative height of the water during this and the prior freshets. It appeared that the *water-way* of the dam was about eighty feet in length. The embankment of the dam was about two hundred and fifty feet long. Such parts of the testimony as are necessary to be particularly referred to, are mentioned in the opinion of the chancellor. After giving evidence of the value of the property destroyed and of the amount of damages, the plaintiffs rested.

The defendants' counsel moved for a nonsuit, contending, 1st. That there was no proof of unskillfulness or negligence in the constructing of the dam; 2d. That this action could not be sustained against the defendants, the work in question having been constructed by the *water commissioners* appointed by the governor and senate, and not by or under the control of the defendants; 3d. That the defendants acted as public agents in all that they had done in respect to the work in question, and for that reason were not responsible; and moreover, that they are not a private corporation entrusted with the performance of the work in question; and lastly, that the only remedy of the plaintiffs for their damages was by an appraisement of the same, pursuant to the provisions of the act of 1834. (*Stat.* 1834, *p.* 453, §§ 13, 14.) The judge denied the motion, and the defendants thereupon excepted.

Evidence was then given on the part of the defendants, and the cause was submitted to the jury, who found a verdict for the plaintiffs for $62,888,73, for which the court below, denying

the defendants' motion for a new trial upon a bill of exceptions rendered judgment for the plaintiffs.

*P. A. Cowdrey,* for the plaintiffs in error.

1. There was no evidence of negligence, and the plaintiffs should therefore have been nonsuited.   None of the facts proved afforded any inference of unskillfulness on the part of the engineers or mechanics who constructed the dam.   The flood which swept it away was of unprecedented extent, and afforded no just means of testing the strength or sufficiency of the dam. (*Townsend* v. *Susq. Turnpike Co.,* 6 *John.* 90.; *Livingston* v. *Adams,* 8 *Cowen,* 175.)

2. The defendants below cannot be held responsible for any supposed negligence in the construction of the dam.   They did not appoint the water commissioners or the engineers or agents who executed the work, and had no power to direct them as to the manner of doing it, or to remove them for unskillfulness or misconduct.   It was not entrusted to the defendants to accept or approve of the dam when finished.   This was left to the discretion of the water commissioners.   The *plan* which the commissioners adopted and the common council approved was general in its character, and did not embrace the details of the work or shew the particular manner in which the dam was to be constructed.   The water commissioners derived their authority in relation to the work from the laws of the state, and not from the common council.   The instructions which that body gave to proceed with the work, was a method provided by law for the corporation to signify its assent to the prosecution of the enterprise.   The city corporation could not exercise any authority over a work to be prosecuted beyond the limits of its own jurisdiction.   The legislature therefore required, as a condition to the privilege given of constructing the work, that it should be done under the control of state officers subject to be removed by the state government.   The power of removal was in fact exercised, and the commissioners who were in office when the dam was carried off were persons who had been substituted by the governor and senate in the place of those originally

appointed. The work was actually performed by the contractors under a written agreement with the water commissioners. The legislature might undoubtedly have provided that the corporation should be liable to suits at law for the acts or omissions of the water commissioners, and then if the common council had accepted the act, the defendants would have been responsible. But no such statutory obligation has been imposed upon them. The relation which the defendants sustained to the work having been such as has been stated, they are not liable at common law for any deficiency or unskillfulness in the construction of the dam. (*Lane* v. *Cotton*, 1 *Salk.* 17; *Bowcher* v. *Noidstrom*, 1 *Taunt.* 568; *Nicholson* v. *Mounsey*, 15 *East*, 390; *Laugher* v. *Pointer*, 5 *B. & Cress.* 547; *Quarman* v. *Burnett*, 6 *Mees. & Welsb.* 509; *Fenton* v. *Dublin S. Pac. Co.*, 8 *Adolph. & Ellis*, 835; *Milligan* v. *Wedge*, 12 *id.* 737; *Rapson* v. *Cubitt*, 9 *Mees. & Welsb.* 713; *Molloy, De Jure Maritimo, b.* 2, *ch.* 3, § 13; *Story on Agency*, §§ 452, 453 *a*, *453 b*, 456, *and note* 3, *to p.* 94.) Whenever the law compels any person to employ a particular individual in a lawful enterprise, it takes away any responsibility for the negligent or wrongful acts of such individual. (*Story on Agency*, § 456, *a; Herrick* v. *Manly*, 1 *Caines*, 257; *Root* v. *Chandler*, 10 *Wend.* 112.)

3. If the defendants are to be regarded as the employers of the water commissioners and their engineers, &c. they acted in that business in a public capacity, and, like other public agents, are irresponsible for the misconduct of those necessarily employed by them. The defendants should be regarded as the agents of the public, in supplying a portion of its territory with one of the essential means of health and life, and not as a private corporation undertaking the enterprise for profit. This is evident from the fact that the legislature entrusted the execution of the work to state officers only. (*Hall* v. *Smith*, 2 *Bing.* 156; *Humphreys* v. *Mears*, 1 *Man. & Ryl.* 187; *Story on Agency*, § 319.)

4. The only remedy of the plaintiffs for their damages, was by an appraisment of the same under the act of 1834. (*Stat.* 1834, *p.* 453, § 13; *Calking* v. *Baldwin*, 4 *Wend.* 667.)

*E. P. Hurlbut,* for the defendants in error.

1. The motion for a nonsuit, so far as it was founded on the alleged absence of evidence of negligence and unskillfulness, was properly denied. The fact that the dam gave way and destroyed the plaintiffs' property was enough ; as a presumption of negligence would arise from this circumstance, which would require evidence on the part of the defendants to repel. (*Aldridge* v. *The Great Western Railway Co.,* 3 *Man. & Gr.* 515 ; *Staffordshire Canal Co.* v. *Hallen,* 6 *Barn. & Cress.* 317 ; *Stokes* v. *Saltonstall,* 13 *Peters,* 181, 182.) But there was positive evidence that the dam was unskillfully constructed and was insufficient to stand the high floods which ought to have been expected. The *water-way* was less than one-third the width of the river during ordinary floods. This was insufficient to pass off the water ; and in this as in other particulars there was gross unskillfulness. The flood in which the dam was destroyed was not of extraordinary magnitude, and should have been contemplated in the erection of the dam.

2. The defendants are liable in this action. A private corporation would be liable in such a case. The enterprise of supplying the inhabitants of the city of New-York with water for pay, was not an act of sovereignty, but an ordinary business ; and when a government becomes a partner in a trading company, it divests itself of its sovereignty, and assumes the character of a private citizen. (*Bank of U. S.* v. *The Planters' Bank of Georgia,* 9 *Wheat. R.* 904.) Municipal corporations are held responsible for such positive acts or omissions of duty as would charge natural persons in a like case. (*Fowle* v. *The Common Council of Alexandria,* 3 *Peters,* 409 ; *Clark* v. *The Mayor, &c. of Washington,* 12 *Wheat.* 40 ; *The Mayor of Lynn* v. *Turner, Cowp.* 86 ; *Goodloe* v. *The City of Cincinnati,* 4 *Hammond,* 500 ; *Smith* v. *The same, id.* 514 ; *Moodalay* v. *The East India Co.,* 1 *Bro. Ch. R.* 469 ; *Western* v. *The Mayor, &c. of Brooklyn,* 23 *Wend.* 334 ; *McCullough* v. *The same, id.* 458.) The fact that the dam was situated in Westchester county, is enough to deprive it of the character of an act of the government of the city of New-York ; for the work was to be

done without the corporate limits, and affected the rights of persons who are not the subjects of its municipal authority. ( *Willcock on Corp.* 16; *Vin. Abr., Corporations, A.* 2.) As to persons and property in Westchester county, therefore, the city corporation must be regarded as a private company owning and transacting business relating to real estate, and, like private persons, bound so to use its own as not to injure another's. (*Bush* v. *Steinman*, 1 *Bos. & Pull.* 404; *Rowe* v. *The Granite Bridge Co.*, 21 *Pick.* 344; *Ex parte Jennings*, 6 *Cowen*, 552, *note.*) The mere ownership of the dam by the defendants renders them liable. (*Bush* v. *Steinman, supra; Stone* v. *Cartwright*, 6 *T. R.* 411; *Fletcher* v. *Braddick*, 5 *Bos. & Pull.* 182.)

The water commissioners were the agents of the defendants. The corporation was not bound to construct these works under the acts. By voluntarily accepting the conditions tendered by the legislature and directing the work to be carried on, they adopted the officers as their own agents. (*Ang. & Ames on Corp.* 46, 50.)

The provision in the act of 1834 for the appraisement of damages is entirely inappropriate, and was not intended to apply to such an injury as was proved in this case; and the legislature, moreover, could not constitutionally enact that injuries caused by negligence should be redressed by an appraisement of commissioners. Citizens sustaining damages from such acts are entitled to the constitutional mode of trial by jury. (*Steele* v. *The Inland Lock Nav. Co.*, 2 *John.* 283; *Fletcher* v. *The Auburn and Syr. R. R. Co.*, 25 *Wend.* 462.)

THE CHANCELLOR. Although it was once doubted whether an action of trespass, or trover, or an action on the case for malfeasance would lie against a corporation, it is now settled in England, as well as in this state that such an action may be maintained against corporations as well as actions upon the case for nonfeasance. ( *Yarborough* v. *The Bank of England*, 16 *East's Rep.* 6; *Duncan* v. *The Surrey Canal*, 3 *Stark. Rep.* 50; *Bridge* v. *The Grand Junction Railway Company*, 3 *Mees. & Wels. Rep.* 244; *Marned* v. *The Monmouthshire*

*Navigation Company,* 3 *Railway Ca: by Munson, Carrow & Oliver,* 159; *Bloodgood* v. *The Mohawk & Hudson R. R. Company,* 18 *Wend. Rep.* 9; *Townsend* v. *The Susquehannah Turnpike Company,* 6 *John. Rep.* 90.) The two principal questions presented for our consideration in this case therefore are, *First,* whether at the time the motion for a nonsuit was made there was sufficient evidence to have authorized the jury upon that evidence, uncontradicted and unexplained, to find that the dam of the defendants was not in a situation to resist the action of such extraordinary floods as might reasonably have been anticipated; and *Secondly,* whether if the dam was not in a situation to resist such floods, the corporation of the city of New-York, as the owner of the dam, is answerable for the loss which other persons sustained by reason of such dam being swept away by the flood of 1841.

Upon the first of these questions, there appears but little room for doubt. What evidence was given on the part of the defendants, to contradict or explain the testimony stated in the bill of exceptions, we do not know; and we cannot therefore say whether the verdict of the jury upon the whole case was right or wrong. But if this case had rested upon the testimony of the plaintiffs' witnesses alone, as that testimony is stated in this bill of exceptions, I think the jury would have been authorized to find that the dam was not such an one as ought to have been constructed and maintained for the purpose for which it was intended, and for the safety of those whose property would probably be injured by the breaking of that dam. The degree of care and foresight which it is necessary to use, in cases of this description, must always be in proportion to the nature and magnitude of the injury that will be likely to result from the occurrence which is to be anticipated and guarded against. And it should be that care and prudence which a discreet and cautious individual would or ought to use if the whole risk and loss were to be his own exclusively. Here the probable, if not the necessary, consequence of the carrying off of the city dam, by a flood, would be not only to sweep away the buildings and erections of all the owners of property upon the Croton below

such dam, but also to endanger the lives of such owners and of their families. The dam should, therefore, have been constructed in such a manner as to resist such extraordinary floods as might have been reasonably expected occasionally to occur. And if the flood of 1841 was not much higher than any which had been known to occur upon this stream within the memory of man, those who had the charge of the construction of the dam should have anticipated such a flood; and should have provided a dam that would have been sufficient to resist the operation of that flood. I should think, from the evidence contained in this bill of exceptions, that the width of the *water-way*, by which the water was to be discharged over the lip of the dam, was insufficient to discharge the waters of such a flood; whereby the water was raised so as to flow over the embankment of earth and cut it away; and that the whole difficulty and loss arose from not anticipating and guarding against so great a rise in the waters of the stream. Although the flood of 1841 was not an ordinary one, I think the evidence of the plaintiffs was sufficient to authorize the jury to find that it was one of those occasional floods to which the Croton had sometimes been subject, and which should therefore have been provided against by those whose duty it was to guard against the probable consequence of such a flood. C. Flewelling, who lived upon the Croton within two miles of the city dam, and was born there, testified that he had seen the river higher than in 1841, something more than twenty years previous to that time. He says nothing of the floods of 1837 and of 1839, as he was then in Bedford. But Gedney, Marshall and Tompkins, all of whom lived about two miles above the dam, thought by the height of the water upon Elbow Island that the same was as high in the flood of 1837 as in that of 1841. And Frost and Bailey, jun. both testified that the floods of 1839 and of 1843 were nearly as great as in 1841. If the evidence given by these witnesses was to be credited therefore, the flood of 1841 was an occurrence which ordinary care and prudence should have anticipated and guarded against.

The question whether the corporation of the city of New-

York is answerable for the insufficiency of the dam to resist the action of such an occasional flood, is one of more doubt and difficulty. I do not think there is anything in the objection that the corporation, in the construction of the Croton dam and aqueduct, was not responsible for the acts of its agents and servants, if the engineers and water commissioners employed by it are to be considered such agents and servants. Nor was this a case in which the plaintiffs were required to have had their damages appraised under the provisions of the act of May, 1834, even if they had the right to apply for the appoint ment of commissioners to estimate the amount of their damages under the 13th section of that act; unless, indeed, the counsel for the plaintiffs in error are right in supposing that no common law action could have been brought against the corporation for such injury to the property of others if no provision for such an appraisal had been made.

I have great difficulty, however, in bringing my mind to the conclusion that the relation of master and servant, or of princi- pal and agent, existed in this case, between the corporation and the engineers and others employed in the construction of this dam; so as to render such corporation liable, on that ground, for negligence which had occurred in such construction. The water commissioners were not appointed by the corporation, nor were they subject to its direction or control in any respect, after it had once signified its will that the work should proceed. Neither had the corporation any right to interfere in the ap- pointment or in the removal of the engineers and others who were employed in the construction of the work; nor even to withhold the payment of their wages, out of the fund provided by law for such payment. It is true the corporation may be said to have set the water commissioners, first appointed by the governor and senate, in motion, by directing them to proceed and execute the work according to the provisions of the statute. But something more than that is necessary to constitute the relation of principal and agent, or of master and servant, be- tween those parties. For a plaintiff in a judgment who delivers an execution to the sheriff to be collected, and directs him to

proceed thereon according to law, sets such sheriff in motion. The sheriff, however, is neither the agent nor the servant of the plaintiff, but is the mere officer of the law in the collection of such execution; and the plaintiff is not answerable either for the misfeasances or the malfeasances of the sheriff in his proceedings upon such execution.

There is a class of cases, however, in which an action upon the case for damages may be maintained against a party for an injury sustained by another, by the wrongful act of a third person, although the relation of principal and agent, or of master and servant, did not exist between the defendant and the person whose wrongful act caused the damage to the plaintiff. The case of *Bush* v. *Steinman*, (1 *Bos. & Pull.* 404,) which was referred to upon the argument, belongs to this class of cases. There the defendant had become the purchaser of a dilapidated house by the way side, but which he had never occupied. He contracted with a surveyor of buildings to repair such house. The surveyor contracted with a carpenter to do the whole labor and to furnish materials; the latter contracted with a mason for a part of the job, and he agreed with a lime burner to furnish and deliver the lime. The lime burner's servant brought the lime and deposited it in the highway in front of the defendant's house; in consequence of which deposit the plaintiff and his wife, in passing along the highway, were overturned and injured. Chief Justice Eyre, before whom the cause was tried, thought the relation of master and servant did not exist between the defendant and the lime burner's man, and that the plaintiff ought to be nonsuited. To save expense, however, he suffered a verdict to be taken for the plaintiff, with liberty to move the court in bank for a nonsuit. A motion was made accordingly, but after hearing counsel, the nonsuit was denied, and the plaintiff was permitted to recover. The chief justice, who ultimately concurred with his brethren in that decision, said they were all satisfied that the action would lie, though they had great difficulty in stating with accuracy the grounds upon which it was to be sustained. He says in express terms, that the relation between master and servant, as commonly exem-

plified in actions brought against the master, was not sufficient to sustain the decision in that case; and that the general proposition that a person shall be answerable for any injury which arises in carrying into execution that which he had employed another to do, was too large and too loose. The court of common pleas appears to have based its decision in that case upon the ground that the owner of the premises was answerable for the nuisance which he had suffered to remain in front of his building, and between it and the middle of the highway to which his premises presumptively extended. Rooke, justice, says, a man who has work going on upon his own premises and for his own benefit must be civilly answerable for those whom he employs; that it shall be intended by the court that he has control over those who work upon his premises, and he shall not be allowed to discharge himself from that intendment of law by any act or contract of his own; that he ought to reserve such control, and if he deprives himself of it, the law will not permit him to take advantage of that circumstance in order to screen himself from an action. That principle applied to the present case will render the corporation of the city of New-York liable for the improper construction of its Croton dam, by, or under the authority of the water commissioners, for the benefit of, and on the premises owned by that corporation.

By the fourteenth section of the act of May, 1834, the title of the property taken by the water commissioners for the purposes of that act is declared to be vested in the city corporation. The dam and the aqueduct must, therefore, be considered the property of the defendants in the court below. And if a dam which was a nuisance, was allowed to be erected and to remain upon the premises, the owner of such premises, the corporation of New-York, is properly answerable for the damage which others have sustained thereby. It is true the corporation had no control over the water commissioners, nor over the engineers or contractors employed by them. But the act of the legislature did not allow the water commissioners to go on with the work, at the risk and at the expense of the corporation, until the latter had instructed them to proceed. Such instruction having been

given, however, the corporation, as owner of the premises on which the dam was erected and maintained, must be answerable if its dam, which was subsequently erected under the direction of those commissioners, became a nuisance and produced injury to the owners of property on the stream below.

Again ; by the general principles of the common law, the owner or occupier of premises was liable for any nuisances upon such premises, on the ground that he was bound to control the use of his property, and to use it in such a manner as not to produce injury to others. And if the owner of land allows others to erect nuisances thereon, or suffers his premises to be in such a situation as to produce injury to others, he is answerable for such injury. Thus where the occupier of a house by the road side suffers it to become so dilapidated as to be likely to fall upon passengers, he is indictable for the nuisance. (*Regina* v. *Watts*, 1 *Salk.* 357.) And if such house should actually fall upon a passenger and injure him or his property, the owner or occupier of such house would be answerable for the damage occasioned thereby. In *Payne* v. *Rogers*, (2 *Hen. Bl. Rep.* 349,) an action upon the case was sustained against the owner of a house for an injury to the plaintiff occasioned by his leg slipping through a hole in the side-walk, into a vault or cellar belonging to such house, owing to the grate which covered it being out of repair. And I think he would also have been liable in that case even if the grate had been intentionally destroyed by the wrongful act of a third person, if the owner of the building had neglected to cause such side-walk to be repaired within a reasonable time after the grate had been destroyed. It is upon the ground that the dam was the property of the corporation and that such corporation was legally bound to see that its corporate property was not used by any one so as to become noxious to the occupiers of property on the river below, that the judgment in this case must be sustained if it can be sustained at all. And upon that ground, though I confess, with some hesitation, I shall assent to the affirmance of the judgment of the court below.

HAND, Senator.   One point presented for our consideration in this case is, whether the plaintiffs below ought not to have been nonsuited for want of sufficient proof of negligence in the construction of the dam.   However much I might differ from the jury in my estimate of the skill and labor of the distinguished engineer who had charge of the work in question ; yet after verdict I could not, upon a writ of error, vote to reverse a judgment for want of testimony upon a mere question of fact.   On looking over this case I think there was sufficient evidence when the plaintiffs rested to justify the judge in refusing the nonsuit and suffering the case to go to the jury.

Nor do I consider the objection valid, that the remedy of the plaintiffs below was by application to the vice chancellor under the act of 1834, and that the plaintiffs have mistaken their fo rum.   Indeed I am strongly impressed with the opinion that the remedy by appraisement there provided is wholly inapplicable to this class of cases.   But if it were not so, the statute contains no prohibitory clause, and a common law remedy cannot be taken away by mere implication in such cases.   If the same statute gave the right and the remedy it might be different.

The great and it seems to me the only important question in this cause is, whether the defendants below are liable for the negligence of the persons employed on the work in question. It was a pretty good stretch of power under the right of eminent domain, to enter and take distant private property for the purpose of supplying a certain place with water.   It was even thought by many, that to exercise this right in favor of rail-road companies, on the ground of their public utility, when the government and supervision of the road and the entire emoluments belong to the company, was going very far.   But to take private property in one place, for the exclusive benefit of the inhabitants of another, is certainly proceeding to the utmost limit of power. The legislature, at its last session, gave the same right to an individual, on the ground that, if constitutional at all, it was as much so to give the franchise to a real as to an artificial person.(a)

(a) See *Stat.* 1845, *p.* 193, *ch.* 185.

This however has not been made a point in the case, and probably since the decision in this court in favor of rail-roads, the analogy is so strong that perhaps the cases may not be distinguishable.

I believe it to be well settled, that a municipal corporation may be made liable *civiliter* in certain cases like any other corporation or a private person, though it is created mainly for the purpose of local government, and is for that purpose entrusted with some of the ordinary attributes of sovereignty. Indeed, where even a sovereign state becomes a member of or interested in a corporation, its interests are just as amenable to the laws of the land as those of an individual. Its sovereignty prevents a suit against it by name; but its rights in those matters, in respect to which it has laid aside its sovereign character, are to be treated like those of others. To use the language of Chief Justice Marshall, in a case where a state was a member of a private corporation, (*Bank of U. S. v. The Planters' Bank of Georgia,* 9 *Wheat.* 904,) "the state, by giving a bank a capacity to sue and be sued, voluntarily strips itself of its sovereign character so far as respects the transactions of the bank, and waives all the privileges of that character. As a member of a corporation, a government never exercises sovereignty." Again, "government by becoming a corporator, lays aside its sovereignty so far as respects the transactions of the corporation, and exercises no power or privilege which is not derived from the charter." (*See also* 6 *Hill,* 33; 2 *Dall.* 419.) And upon analogous principles, municipal corporations, though not liable for the acts of independent officers whose duties are specifically prescribed by law though appointed by them, have been held liable for the acts of their officers and agents of whom they had the appointment and supervision, and when the duty to be performed was for the benefit of the corporation. (*Schinotti* v. *Bumsted,* 6 *T. R.* 646; *Clark* v. *Mayor, &c. of Washington,* 12 *Wheat.* 40; *Best, C. J. in Hall* v. *Smith,* 2 *Bing.* 156; *Moodalay* v. *East India Co.,* 1 *Bro. C. R.* 469; *Martin* v. *Mayor, &c. of Brooklyn,* 1 *Hill,* 545: *Mayor of Lynn* v. *Turner, Cowp.* 86; *Goodloe* v. *City of Cincinnati,* 4 *Hammond,* 500; *Mitford,*

103.) In the case of *Clark* v. *Mayor of Washington*, Chief Justice Marshall laid great stress upon the fact that the lottery was "for effecting an important improvement in the city." On the other hand, where such a corporation is bound to appoint an officer for the performance of a public duty, it is not liable. Neither is an individual, who in the performance of a public duty is obliged to appoint third persons to perform labor for the public, liable for their acts, unless in cases of personal supervision, so long as they keep within the scope of their authority; as a clerk of the commissioners of streets for the acts of the surveyor, and the like. (*Hall* v. *Smith*, 2 *Bing* 156; *Whitfield* v. *Ld. Le Spencer*, *Cowp.* 754; *Nicholson* v. *Mounsey*, 15 *East*, 384; *Harris* v. *Baker*, 4 *M. & Sel.* 27; *The Plate Glass Co.* v. *Meredith*, 4 *T. R.* 794; 1 *id.* 172; 3 *Pet.* 409; 4 *John. R.* 459; 9 *id.* 117; 10 *Wend.* 112.) Neither is an individual, in the performance of an official duty not ministerial, and the performance of which requires the exercise of discretion and judgment, liable to a civil action, where no corruption or malice can be imputed if he keeps within the scope of his authority. (*Kendall* v. *Stokes*, 3 *How.* 87; *Tompkins* v. *Sands*, 8 *Wend.* 462; *Gidley* v. *Ld. Palmerston*, 3 *B. & B.* 275, *and cases cited supra.*) Otherwise, where he has no judicial power or discretion at all. (*Ld. Brougham, in Ferguson* v. *Earl of Kinnoul*, 9 *Clark & Finnelly's Rep.* 289; 15 *Peters*, 403.)

For negligence in the use of personal property in private business, there seems to have been some contrariety of opinion in England. In relation to the liability of hirers and owners of carriages, there has been heretofore much conflict. Perhaps it may now be considered settled there, in the case of *Quarman* v. *Burnett*, (6 *Mees. & Welsb.* 499,) and see 12 *Adolph. & Ellis*, 737.

We are also referred to the cases arising out of the collision of ships. Here, too, there is some difference of opinion; some of the cases holding that the master and owner are not liable while the ship is under the charge of the pilot. (*Snell* v. *Rich*, 1 *John. R.* 305; *The Maria*, 2 *Rob. Adm. R.* 95; *The Agri-*

*cola,* 7 *Law Jurist,* 157 ; *Bowcher* v. *Noidstrom,* 1 *Taunt.* 568 ; *Lucey* v. *Ingram,* 6 *Mees. & Welsb.* 302 ; *McIntosh* v. *Slade,* 6 *Barn. & Cress.* 657.) But *Fletcher* v. *Braddick,* (5 *Bos. & Pull.* 182,) and *Bussey* v. *Donaldson,* (2 *Dall.* 206,) hold the owners liable. In *Fletcher* v. *Braddick,* the commissioners of the navy had chartered the vessel and put an officer on board, and a king's pilot was in charge. In the case of *Fenton* v. *Dublin Steam Packet Co.,* (8 *Adolph. & Ellis,* 835,) the defendants let the vessel and furnished the captain and crew, but the party who hired her paid every thing and was on board ; yet the defendants were held liable. So, too, in *Martin* v. *Temperley,* (4 *Adolph. & Ellis, N. S.* 298,) where the defendant hired licensed watermen to work his barges by the job, it was held that he was liable for their neglect. The court seem to disregard the opinion of Dr. Lushington in the case of the Maria, and say he must have put that case on the phraseology of the statute, which exempts owners from liability for the act of a licensed pilot. They also distinguish the case from the one of *Milligan* v. *Wedge,* (12 *Adolph. & Ellis,* 737,) where it was held, that the owner of a bullock was not liable for the acts of the boy of a licensed drover he had employed, on the ground of that being a " separate trade." Such is the ground on which *Rapson* v. *Cubitt* (9 *Mees. & Welsb.* 710) was decided. There the defendant was employed by the committee of a club to do certain work to their rooms, and he employed a gas-fitter, whose boy caused the mischief ; and it was held that the boy was not the servant of the defendant. And yet, in the case of *Randleson* v. *Murray,* (8 *Adolph. & Ellis,* 109,) a warehouseman was held liable for the act of a servant of a carman, the latter being hired by a master porter, who was employed by defendant to remove some goods, in doing which the injury happened. Where the defendant is actually in charge, he is generally held liable. ( *Witte* v. *Hague,* 2 *Dow. & Ry.* 33.) I doubt whether the owner is ever free from liability for the neglect of the pilot, unless exempted by statute. Nor can I see how, on principle, the mere fact of the person employed having a separate trade, can

The Mayor, &c. of New-York *v.* Bailey.

relieve the party for whose benefit the agent acts. We employ those of a different trade to do most of our mechanical work.

But there is another class of cases worthy of notice. These are, where the injury is done by the neglect of those employed to improve real estate. It seems the proprietor is liable although there are several sub-contracts, and there is no personal supervision by the owner, on the ground that he is owner and expects to derive benefit from the work. In these cases the maxim *respondeat superior* applies. Such is the doctrine explicitly laid down in several cases. (*Leslie* v. *Pounds*, 4 *Taunt. R.* 649; *Stone* v. *Cartwright*, 6 *T. R.* 411; *Bush* v. *Steinman*, 1 *Bos. & Pull.* 404; *Sly* v. *Edgley*, 6 *Esp. Rep.* 6; *Best, C. J. in Hall* v. *Smith*, 2 *Bing.* 156; *Abbot, C. J. and Littledale, J. in Laugher* v. *Pointer*, 5 *Barn. & Cress.* 547; *and see* 2 *Lev.* 172.) In the case of *Stone* v. *Cartwright*, a steward hired and paid the hands and discharged them at his pleasure, but had not the personal charge of them, and the court say that he is a middle man and not liable; that the action must be brought against the owner, or the "hand committing the injury." Mere payment for the work by another (as a lessee) it seems does not relieve the owner. (*Leslie* v. *Pounds, supra.*)

I think then we may lay down the following legal corollaries as deducible from the cases: A sovereign power, though it can not be sued, yet if it become a member of a corporation, or if it acts through or by a corporation, lays aside its sovereignty as to that transaction or character. That though it may perhaps exercise its right of eminent domain, so far as to allow a municipal corporation to enter on private lands, on making compensation, for the purpose of supplying its inhabitants with water; yet if it lends its aid in the further management of the business, it will assume no more rights in that respect for itself, or for the corporation, than the corporation would otherwise have had. That a municipal corporation, though not liable for acts requiring the exercise of discretion when those acts are for the benefit of the public, or for the acts of independent officers whom it is obliged to appoint, and whose duties are specifically prescribed by law, yet is liable for the acts of the agents it voluntarily em-

ploys to do business for its own private benefit, the same as any other corporation or individual. That the owner of real property is liable for the acts of those he employs, directly or indirectly, to improve his property for his own benefit, and particularly if done at his expense; and lastly, that a "middle man," or one who merely selects the agents or makes the contract but is not owner, and does not pay for, nor personally superintend the work, is not liable. Perhaps, paying would not make any difference, as was held in *Fenton* v. *Dublin Steam Packet Co.*

If these positions are correct, I am led to the conclusion that they are fatal to the motion for a new trial in this cause. It seems to me that the state is at most but the "middle man" as to the erection of these works. As to that part of the business, it lays aside its sovereignty and acts for and under the corporation. The whole transaction, except the exercise of the right of eminent domain is, I think, purely a matter of the corporation, at least so far as third persons are concerned. The corporation for its own benefit applies for the law, and an act is passed, the acceptance of which is not compulsory, but it is accepted. The whole matter from this moment is thus made voluntary on the part of the corporation. Then the corporation owns the land on which the works are erected. It pays the commissioners and the engineers, and all the expenses. It adopts the plan and gives instructions to proceed with the work. The corporation also ratifies the contract. The land under streets is taken by the commissioners "on behalf of the corporation," and the corporation pays all damages, and all this is done for the benefit of the city. I think the whole enterprise is substantially the business of the corporation, and consequently that it is liable in the same manner as though it had actually appointed the agents.

For these reasons I am of opinion that the judgment of the supreme court ought to be affirmed.

Senator BOCKEE delivered a written opinion in favor of affirming the judgment of the supreme court, in which he came to the conclusions, 1st, that the destruction of the dam by the flood was *prima facie* evidence that it was insufficiently constructed;

2nd, that by the acceptance of the act of 1834, and the directions by the common council of the city of New-York to proceed with the work, the water commissioners became the agents of the defendants by adoption; and lastly, that the provisions of the act relating to an appraisal of damages were not applicable to the case of the plaintiffs.

Senator BARLOW delivered a written opinion also in favor of affirming the judgment of the supreme court, on the ground that by the true construction of the act and of the proceedings of the common council under it, the water commissioners became the agents of the defendants.

GARDINER, President. If the question was material to the decision of this cause, I should find some difficulty in regarding the plaintiffs in error in the light of a private corporation, as a rail-road or banking company, upon which a special franchise had been conferred. The manifest distinction between that class of cases and the present one is, that in the former the franchise would be granted and accepted with a view of directly benefitting the individual corporation and indirectly the public; and that in the present case the object was to preserve the health and promote the comfort of the residents in the chief city of the Union; an object in which the public had a direct interest, while the corporation of the city of New-York, as such, was only indirectly benefitted, if at all. It is true that the corporation derives a revenue from the sale or lease of the Croton water; but no one can suppose that revenue to the city of New-York formed the motive for this grant or for its acceptance. The legislature must have believed, and the corporation of that city knew, before it 'instructed the water commissioners to commence this work, that the anticipated revenue would be insufficient to pay the interest upon the debt necessary to be contracted in its prosecution, and that the balance of interest, as well as the principal of that debt, must be drawn from the inhabitants of that city by direct taxation. We have no reason to suppose that this project would have been entertained by the people of that city for a moment,

for the mere purpose of revenue.  The distinction to which I
have adverted is important.  The public interest required and
induced the passage of the law, and it was that consideration,
and not the expectation of revenue or corporate gain which actu-
ated the common council in accepting that law with the respon-
sibilities which it created.  And this consideration should have
its legitimate influence here, when we are called upon to give a
construction to that law by which those responsibilities may be
increased.

With these remarks I shall proceed to the consideration of the
only question I shall discuss, and upon which, as I view the
case, the rights of the parties depend.  That question, as stated
by the learned chief justice, is whether the water commissioners
charged with the immediate superintendence and execution of
the work stand in the relation of agents deputed by the plaintiffs
in error.  At the common law, where an agency exists the
principal becomes responsible for the acts of his agent, because
he has the right to employ and the authority to control him.
Where the right of employment and the authority to control are
both wanting, no agency can exist; for the acts of the agent
cannot in such a case, upon the principles of common law or
common sense, become the acts of the principal.  Employment,
however, implies the right of selection from the community at
large, or at least from a particular class.  But this statute gives
both the selection and appointment of these commissioners to
the state, and in the discharge of all their duties in effect de-
clares them irresponsible to and independent of the corporation.
They cannot be removed, controlled or even advised by their
supposed principals.  Whatever the relation between these par-
ties may be, it would be preposterous to treat it as a common law
agency.  The commissioners, it is true, have certain duties to
perform for the benefit of the inhabitants of the city of New-
York or of the corporation; but these duties are performed un-
der the authority of the law of the state and not under the
corporation.  The sheriff and constables of New-York are elected
by the inhabitants, and their duties are supposed to promote the
general prosperity of the city, by their agency in the adminis-

tration of justice; and yet the corporation is no more responsible for their misconduct, even in its service, in its behalf and at its request, than for that of a judge of the superior court. Nor would it make the slightest difference in principle, if the duties of these officers were prescribed by the charter and their compensation paid from the city treasury. Suppose the legislature should grant a private right of way over the land of one citizen for the benefit of another, and direct the surveyor general to make a survey of it, and provide that he and his assistants should be paid by the party benefitted; and that in the discharge of this duty the officer, by a careless use of his instruments, should put out the eye of a bystander. Would the applicant for the way be liable? It would be a conclusive answer to such an action that the condition of the grant was the payment of the officer, and that having been complied with, all the rest was the act of the law which designated the surveyor and prescribed his duties. A vessel upon entering a port is obliged, by the general law, to employ the pilot who shall first offer to take charge of the ship; and yet the master and owners are not responsible for injuries to third persons arising out of the negligence of the pilot while he is thus in charge. The authorities are full to this point. (*Story on Agency*, § 434, *and cases cited.*) Suppose there was no such general law, but that a company incorporated for the purpose of navigation had a provision to that effect in its charter. Would the principles be changed? The theory upon which the owners are excused by the existing law is that they are deprived of the right of choosing or controlling the pilot; and the reason would be equally strong if the law was found in the charter, instead of being a general maritime regulation. It is true that in the case supposed the company voluntarily accepted the charter and thereby assented to the provision in question; but they did not agree that the relation which the pilot should be deemed to sustain towards them should be different from that which the common law assigns to parties thus circumstanced, or that the party who was for the time being the uncontrolled director of the ship, and so constituted by the law under which they had their existence, should be adjudged their

servant or agent. A pilot imposed upon the master and owners under the law referred to, and the water commissioners in executing the work in question were, I submit, the agents of the law, deputed by legislative warrant to discharge the duties legally belonging to their respective situations. The rights and obligations of this corporation in reference to this subject are definitely fixed by the statute under which the work was carried on; and if that act does not create the relation of principal and agent, or of master and servant, between the corporation and the water commissioners, no such relation has ever existed. The material question in this cause must therefore be determined by a careful examination of the statute. It will not be denied, it is presumed, that the legislature may annex such conditions to the grant of a particular franchise as they may deem expedient. I admit that in the present case it was competent for them to have declared that the commissioners should not only perform certain acts for the benefit of the corporation, but that the latter should be responsible for the consequences of those acts in the same manner that an employer is liable for the acts of his agents and servants at common law. Or the legislature might have clothed the corporation with the same powers over the persons who actually executed the work, which are ordinarily possessed by employers in respect to their servants, and then the common law liability would result from the establishment of the common law relation of master and servant. But it seems to me that a liability for the acts of third persons must necessarily be imposed upon a corporation, if at all, by one or the other of these methods. There is no *tertium quid* by which a corporation any more than an individual can be made responsible for the incompetency, negligence or misfeasance of third persons. The first inquiry will then be, does the statute in terms impose any liability upon the corporation of the city of New-York, the defendants below, for the delinquency of the water commissioners appointed under the statute in question, or of the persons appointed or employed by these commissioners? This will not be pretended. The statute certainly does not, in terms, declare that the corporation shall be responsible for the negligence or want of skill of the engineers

or subordinates whom the commissioners may appoint; nor is any provision to be found in the act to the effect that the commissioners shall be deemed the agents or servants of the corporation. The law has however, in other particulars, defined and fixed the obligations of the city government. It is to raise money by loan, upon the pledge of the revenue to be derived from the work, and set the same apart to be paid out upon the drafts of the commissioners : first, for lands appropriated by the commissioners for this work; secondly, to pay for the construction of the work itself; and lastly, to pay the commissioners themselves and those they choose to employ. These obligations, and they are far from being nominal, the plaintiffs in error representing the city of New-York, by accepting this law assumed; and there is no complaint but that they have been faithfully performed. If any other duties are imposed upon them, it is sufficient upon this point to say that they are not expressed in the statute.

In the second place, does the statute by any necessary implication create the relation of principal and agent as recognized by the common law between the corporation and the commissioners? If it has, the common law liability of the principal would follow as a necessary incident. Why did the legislature reserve to the state authorities the power of appointing the commissioners? Obviously because the prosecution of this work would necessarily affect the interest of those who resided without the bounds of the city, and were neither directly or indirectly represented in the city government. Agents of the corporation would naturally be biassed in favor of their constituents, whereas officers appointed by the state, whose powers and authority were prescribed by a public law, might be supposed to be impartial; and a sense of personal responsibility would secure vigilance and caution. Neither the terms of the statute, nor any reasonable inference from its language, nor the supposed object of the legislature, afford the slightest warrant for the idea that the corporation and the commissioners sustain towards each other the relation of principal and agent, or that of master and servant.

The learned chief justice, however, remarks that "the under

The Mayor, &c. of New-York *v.* Bailey.

taking of the work was made to depend upon the approval of the plan of the commissioners which necessarily involved the right to adopt or reject the work altogether, if they disliked the system prescribed by the legislature. This approval," he adds, "having taken place, together with the subsequent measures of the common council instructing the commissioners to proceed in the execution of the work, constituted them the agents of the plaintiffs in error as effectually as if the latter had originally appointed them. The act of adoption in the one case was as free and voluntary as the appointment in the other." The reasons thus succinctly but clearly stated, are undoubtedly those which governed the court in their decision, and upon them the very able counsel for the defendants in error have placed their chief reliance. The common council had the right to approve or disapprove of the plan adopted by the commissioners; but that surely did not include the right to reject that report because they disapproved of the law, or of the agent by whom it was to be executed. They had accepted the law, as we have seen, immediately upon its passage. They had provided for the payment of the commissioners, and thus acquiesced in and acted under the law. The report and plan were laid before them. The only question for the consideration of the common council was whether the plan of the work presented by the commissioners was such as they could approve. If the plan, as such, was unobjectionable, they could not reject it without being guilty of official perjury. Let us test this principle, which lies at the foundation of the opinion of the supreme court. Suppose the common council had declared, by resolution, that they cordially approved of the plan presented by the commissioners as the best that could be devised; but that they rejected it because they disliked the law, or distrusted the competency of the commissioners. The supreme court would have corrected such a decision upon *mandamus,* and would have declared to the corporation that having accepted the law, they were bound by its provisions, and moreover, that their duty was specific to approve or disapprove of the plan of the work upon its merits; and that in the discharge of their duty, they were not at liberty to enquire

into the expediency of the law, or the qualifications of the com missioners appointed by the state. I am compelled to dissent from the reasoning of the learned chief justice upon this branch of the case. I insist that there is a plain distinction between approving the plan of a public work, and of the law authorizing it and the agents by whom it is to be executed, and that the plan in this case may have been worthy of all commendation in the opinion of the common council, although they thought the law defective, and the state agent incompetent to the erection of a gate across a turnpike. The other act of the common council, which is relied upon in the opinion of the supreme court as evidence of voluntary adoption of these commissioners by the corporation as their agents, is their instructions given to the commissioners to proceed in the work. The difficulty in this assumption of the learned chief justice who delivered the opinion, consists in supposing that in giving these instructions the common council acted voluntarily, and that they possessed the legal right to withhold them; whereas they had no discretion on the subject. By the seventh section of the act, if the common council approved the plan they were to submit the question of raising the money necessary to complete the work to the electors of the city, for their assent. If a majority gave that assent, the eighth section provides that "it shall then be lawful," for the common council to instruct the commissioners to proceed in the work, and that "it shall also be lawful," for the common council to raise the money to carry on the work by loan. It will not be pretended, it is presumed, that the corporation, after giving the instructions, to proceed with the work, were at liberty to refuse to raise the money necessary to carry it on. Yet the same language is applied to each of these subjects in the same section. The statute, in this respect, is mandatory. In each case it says that the act to be done shall be lawful. In both the acts themselves must be performed. The precise point was so settled by the supreme court in *The City of New-York* v. *Furze*, (3 *Hill*, 614;) and upon the authority of that case a *mandamus* would have lain to the common council if they had withheld the instructions prescribed in the statute. Again, this doctrine of

voluntary adoption by acts subsequent to the acceptance of the law, is opposed by the difficulty that up to the time of the approval of this plan the commissioners were the agents of nobody. They may have been engaged with a whole corps of assistants and engineers for a year, in making surveys and preparing a plan, for which the corporation was to pay. During the whole of the time they were certainly not the agents of the corporation, for the acts of assent and adoption relied on had not then taken place; and if during this period they were the officers of the law, it is difficult to perceive why they should be held to sustain a different character while they were performing the remaining duties prescribed by the statute under which they were appointed. It may be proper to observe, with a view to a correct understanding of this subject, that as early as the year 1832, a draft of a law was approved by the authorities of the city of New-York, which in terms conferred upon the corporation of that city the authority to appoint water commissioners to enter upon lands, and in general to perform the several duties imposed upon the water commissioners by the existing law. This bill did not become a law. In the year 1833, an act was passed which provided that the governor, with the consent of the senate, should appoint five persons as water commissioners, who, by subsequent sections of the act, were clothed with the powers which by the bill prepared as above mentioned were sought to be conferred upon the mayor, aldermen and commonalty of the city. This act expired by its own limitation in February, 1834, after having been accepted by the corporation. In May, 1834, the act was passed under which the dam in question was built, which contains substantially the provisions of the act of 1833, which, as we have seen, had been adopted by the corporation. The inference is therefore irresistible that the act of 1834 was accepted at the time of its passage, and before any commissioners had been appointed. At all events it was adopted prior to the report of a plan and estimate by the commissioners to the corporation, as is manifest from the ordinance of the common council of July, 1834, with a copy of which we have been furnished by the parties.

I am therefore of opinion that the judgment should be reversed. *First*, because the liability sought to be enforced against the plaintiffs in error is not imposed upon them by the terms of the statute which specially designates the acts to be done and the responsibilities to be incurred by the city of New-York. *Secondly*, because this obligation cannot be implied, inasmuch as the corporation by the statute are deprived of the right to select or appoint the commissioners and of all authority over them—rights, one or both of which are indispensable to the existence of an agency at common law, and the responsibilities incident thereto.    *Thirdly*, because it was the obvious intention of the legislature to protect the interest of persons residing without the limits of the city which might be affected by this work, through the intervention of their own officers.   *Fourthly*, because the commissioners were not adopted by the defendants below as their agents, neither by the acceptance of the law for the reasons stated, nor by the approval of the plan, the authority to give such approval not necessarily nor in any way involving the right to reject the plan on account of objections to the law or the persons by whom it was to be executed, nor by the instructions to proceed given to the commissioners, the corporation having no right to withhold such instructions.

On the question being put " Shall this judgment be reversed," the members of the court voted as follows :

*For reversal:* The PRESIDENT, and *Senators* FOLSOM, JONES and LOTT—4.

*For affirmance:* The CHANCELLOR, and *Senators* BACKUS, BARLOW, BEERS, BOCKEE, BURNHAM, CHAMBERLAIN, CLARK, CORNING, DEYO, EMMONS, FAULKNER, HAND, JOHNSON, LESTER, PORTER, SEDGWICK, SMITH and TALCOTT—19.

Judgment affirmed.