# CASES

IN THE

## COURT OF NISI PRIUS,

AT

## PHILADELPHIA.

---

## Myers *v.* Snyder.

### [FEBRUARY 23, 1848.]

A master or employer is responsible for the illegal acts of commission or omission, short of wilful wrong, done or suffered by his servant or agent, in the prosecution of the business intrusted to him by his principal, whereby third persons are injured.

There is no distinction between the responsibility of an employer for the acts of an ordinary agent or servant, and of a contractor for the erection of a building; both are included within the operation of the rule.

One engaged in the prosecution of a lawful work, is bound to use such care and caution in carrying it on, as will reasonably enable others, by the practice of ordinary prudential care, to avoid personal hurt, and prevent injury to their property.

In the case of excavations, more especially in public places, it is the duty of those owning or having them in charge, so to guard and fence them, or, at least, to give such warning notice of their existence, as will be sufficient to prevent others using ordinary caution, from falling into them.

But a person injured by such means is not entitled to recover damages if the accident was the result of his own carelessness.

In such case, however, want of care on the part of the plaintiff, is not to be presumed; it must be proved, or properly inferable from the evidence in the cause.

2 G

[Myers *v.* Snyder.]

ACTION on the case for negligence.    It appeared from the evidence that the defendant was the owner of a vacant lot, situate between two houses, on the west side of Morris street, which runs from Pine to Lombard streets, between Broad and Schuylkill Eighth streets, in the city of Philadelphia.    In October, 1845, he contracted with one Elijah Jones for the erection of a house upon this lot.    The contractor proceeded to dig out the cellar, which was left without any fence or guard, or any thing to indicate the presence of an excavation; and, on the morning of the 27th of October, 1845, before day-light, about three o'clock, (being a dark and foggy morning) the plaintiff, a newspaper carrier, fell into the cellar while pursuing his usual occupation, and was thereby severely injured: his thigh-bone was fractured, his spine dangerously injured, and in consequence he was confined to his bed for several months, and has become disabled for life, (by the distortion of his hip, and a curvature of the spine) from any active employment. There was no public lamp near enough to indicate the presence of an excavation.

*Webster* and *Barton*, for plaintiff, requested the court to charge the jury as follows:—1. That a person building a house in the city of Philadelphia, is bound to guard and protect the cellar thereof, in such a manner, as that persons walking along the footway shall not be liable to fall into it. 2. That if the defendant allowed his cellar to remain open and placed no guard or protection to prevent persons falling into it; and the plaintiff, in the dark, walked into it by mistake, plaintiff is entitled to recover.   3. That the defendant is responsible for all damages resulting from the negligence or misconduct of his servant, in the regular course of his employment.

*Hopper* and *Clarkson*, for defendant.

The following charge to the jury was delivered by

[ Myers *v.* Snyder.]

BELL, J.—This is an action on the case, to recover damages for injuries suffered by the plaintiff, from the negligence of the defendant or his servants, in suffering a certain cellar to remain open during the night time, without a guard or fence of any kind, whereby the plaintiff, whilst engaged in his lawful business, fell therein and was severely and permanently injured.

It appears, the cellar in question was excavated under the direction of a certain Elijah Jones, who had been employed by the defendant to erect a brick building over it, in Morris street, in this city. The ownership of the property and the employment of Jones by the defendant, are undisputed facts. These bring the case within the operation of the legal principle which makes a master or employer responsible for the illegal acts of commission or omission, short of wilful wrong, done or suffered by his servant or agent, in the prosecution of the business intrusted to him by his principal, whereby third persons are injured.

It may seem harsh to make one person liable in damages for the misfeasance or nonfeasance of another, but the rule to which I have adverted is founded in motives of public policy, having for its object the protection of the rights of other members of the community. As it is said to be a privilege to allow a man to substitute another for the transaction of business, the law exacts, as the price of this privilege, that the principal stand responsible for the misconduct of his agent. A distinction has been attempted at the bar, between an ordinary agent or servant, employed to discharge a particular function, or to carry on a general business, and a contractor or undertaker for the erection of a building, as is the case in the present instance. But I have failed to perceive the difference. The reason of the rule is as applicable to the latter species of agent as to the former, and, therefore, both are included within its operation. It will be perceived, that what has been said on this head, is in affirmance of the third point submitted by the

[Myers *v.* Snyder.]

plaintiff. The action is founded in imputed negligence, and if there was such negligence here, either upon the part of the defendant himself, or of his agent—though without any personal default in the defendant—as, in law, entitles the plaintiff to damages, he may recover in this action.

Has there been such negligence? It is a principle that one engaged even in the prosecution of a lawful work, is bound to use such care and caution in carrying it on, as will, reasonably, enable others, by the practice of ordinary prudential care, to avoid personal hurt, and prevent injury to their property. In the case of excavations, more especially in public places, it is the duty of those owning or having them in charge, so to guard and fence them, or, at least, to give such warning notice of their existence, as will be sufficient to prevent others, using ordinary caution, from falling into them. As, for instance, where there is a mine-shaft on a new or public thoroughfare; an area in front of a house; a well or other opening in, or contiguous to, a public street: in all these cases, if the owner omit to protect or fence them so as, reasonably, to prevent accident and consequent injury to others, he is guilty of such negligence as will subject him to answer for any damage resulting from his omission. I know of no difference, in the application of this principle, between an excavation for the cellar of a house, about to be erected, and the other like openings to which I have referred, and I perceive no sufficient reason upon which such a difference could, with propriety, be founded. Each may be productive of the same mischief, and, therefore, it would seem, ought to be within the same remedy. For this reason, I feel constrained to return an affirmative response to the plaintiff's first point.

But before you find a verdict for him you ought to be satisfied the accident from which he suffered was not the result of his own gross carelessness. Every one is bound, in cases like the present, to use the care and caution which would characterize the conduct of a prudent person, and if

[Myers *v.* Snyder.]

he suffers from the absence of such ordinary caution, he cannot impute his misfortune to another. If the plaintiff recklessly or foolishly walked into the cellar when, by using his eyes or other ordinary means of ascertaining its presence in his path, he might and would have avoided it, he is not entitled to recover.

But the jury are not to conjecture that the fact was so. You should be satisfied, either by some direct proof or from the circumstances shown by the evidence, that such ordinary care was not used. That the plaintiff was found in the cellar, very materially hurt and in a state of great suffering, is put beyond question. How did he get there? This question it is for you to answer upon all the proofs in the cause. When responding to it, you may look to probabilities and adopt that you shall judge to approach nearest the truth, as indicated by the evidence.

With the qualification conveyed by the remarks I have offered on the subject of the caution to be exercised by the injured party, the plaintiff's second point is affirmed. In considering this point of the case you will pass in review the time, the occasion, and all the incidents which preceded, attended and followed the accident. This will probably remove all difficulty in the way of a correct conclusion.

The subject of damages is peculiarly for you No malice or wilfulness on the part of the defendant is alleged here. It is therefore not a case for vindictive damages: compensatory damages are all that can be asked, and the standard of these is the bodily suffering the party has undergone and the pecuniary loss inflicted by the personal injuries of which he complains. This last includes, of course, the permanent disability of pursuing his prior active and accustomed employment, under which he must continue to labour.

There was a verdict for the plaintiff for $800 damages.*

* The doctrine of the foregoing case is sustained by the decision in *Bush* v. *Steinman,* 1 Bos. & Pul. 404, which, however, (except in cases of nuisance)

[ Myers *v.* Snyder. ]

as well as *Randleson* v. *Murray*, 8 Ad. & El. 109, have been denied, in the later English cases, to be law. See *Quarman* v. *Burnett*, 6 Mees. & Wels. 499; *Rapson* v. *Cubitt*, 9 Mees. & Wels. 710; *Milligan* v. *Wedge*, 12 Ad. & El. 737; *Allen* v. *Hayward*, 7 Q. B. 960; *Reedie* v. *North-western Railway Co.*, 4 Exch. R. 244; S. C., 2 Am. L. J. 507; *Knight* v. *Fox*, 20 Law J. Rep. (N. S.) Exch. 65; 14 Jur. 963; 1 Eng. L. & Eq. Rep. 477. The application of the general doctrine is there denied where the relation of the parties is that of principal contractor and sub-contractor, and it is now held that such principal contractor is not responsible for the wrongful acts or negligent conduct of servants employed by such sub-contractor in the prosecution of the work, except, perhaps, in cases where the acts complained of amount to a nuisance. The case of *Bush* v. *Steinman* is, however, recognised as sound law in this country; 23 Pick. 24, 31; 2 Denio, 433, 443.