Nov. Term,
1851.

THE CITY OF
MADISON
v.
ROSS.

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs. Cause remanded, &c.

*J. Perry* and *J. Yaryan*, for the plaintiff.

*J. S. Newman* and *J. S. Reid*, for the defendant.

---

## THE CITY OF MADISON v. ROSS.

The corporate authorities of a city are not liable for an injury to private property caused by the erection, on a public street or road within the limits of the city, over a small stream, of a culvert and embankment which have proved insufficient to resist an extraordinary flood, if the culvert and embankment had proved sufficient for all purposes for about three years, and ordinarily careful and thoughtful men, and engineers of usual skill, would not have contemplated that such extraordinary flood would ever occur.

The degree of care and foresight which it is necessary to use in cases of this description, is that which a discreet and cautious man would or ought to use, if the risk and loss were to be exclusively his own; and it should be in proportion to the nature and magnitude of the injury likely to follow from its omission.

*Saturday,*
*December* 6.

ERROR to the *Jefferson* Circuit Court.

PERKINS, J.—Case by *Ross* against the city of *Madison.* The declaration alleged that the plaintiff, *Ross,* was the owner of a tan-yard, and that the city of *Madison* constructed a culvert and embankment across a small stream of water on *Second* street, in said city, so unskillfully that, by means thereof, said plaintiff's tan-yard was overflowed and destroyed. The city pleaded the general issue, and a special plea which need not be noticed. The issues were of fact. They were tried by a jury, and *Ross* obtained judgment. The evidence is not upon the record. The question in the case, for there is but one raised by counsel in this Court, arises upon instructions given and refused. The Court instructed the jury as follows:

"1. The city of *Madison* is liable for injuries done by her agents, as individuals are (1).

"2. If, in this case, the city, by her council, made an

appropriation of 50 dollars, and appointed *Marsh* and *Ford* to expend it in the erection of the culvert in question, and it was erected by *Dunlap* on a contract made by said *Marsh* and *Ford*, and paid for by the city, and it was erected negligently, carelessly, or unskillfully, so that it was thereby insufficient to pass off the water, and the plaintiff's tan-yard was overflowed, and he damaged thereby, the city of *Madison* is liable to said *Ross*.

" 3. It is immaterial whether the contracts were made in writing or not, or whether the improvement was made on a street, or on the *Lawrenceburgh* road, if within the corporate limits of the city.

" 4. The city of *Madison* is as much bound by the acts of *Marsh* and *Ford*, if they assumed to act as her agents, and after the acts were done she paid for them, and ratified them, as if she had at first ordered the improvement and made written contracts according to her charter and ordinance (2).

" 5. If the jury find from the evidence that, owing to the negligent, careless, or unskillful manner in which the culvert in question was constructed, the tan-yard of the plaintiff was overflowed and he damaged, or the overflow and damage were thereby increased, the jury should find for the plaintiff.

" 6. If the jury find that the flood of water which the plaintiff says injured his tan-yard, would have injured the tan-yard equally as much, if said culvert and improvement had not been made, the city is not liable."

The Court refused to give this instruction, the same being relevant:

" If the jury shall find that the damage complained of was occasioned by a flood of water so much more extraordinary than usual, that ordinarily careful and thoughtful men and ordinarily skillful engineers would not contemplate that such a flood would ever come, and said culvert and improvement did prove sufficient for all purposes for about three years, the jury should find the damage to have happened by what, in law, is called the act of God, and should find for the defendant."

The question raised is, as to the rule or principle by which the jury were to be governed in determining whether the culvert and embankment were, or were not, unskillfully constructed. Were they to regard them as unskillfully and negligently made, unless they were such as to withstand every possible force of the element; or should they regard them as skillfully done, if such as to withstand every probable force? On this point, the Court gave no direct instruction; but the inference to be drawn from those given, taking them all together, would rather be, that if the damage to the plaintiff happened in consequence of the improvement, the city was liable at all events. The defendant, however, if he asked it, had a right to a definite instruction touching this matter. He did ask one, and, if it expressed the law, or was within it, he was entitled to have it given to the jury. We think it was within the law and should have been given. In *The Mayor, &c., of New York*, v. *Bailey*, 2 Denio, 433, the chancellor has the following remarks, which are directly to the point, and, we think, entirely correct:

" The degree of care and foresight which it is necessary to use, in cases of this description, must always be in proportion to the nature and magnitude of the injury that will be likely to result from the occurrence which is to be anticipated and guarded against. And it should be that care and prudence which a discreet and cautious individual would or ought to use if the whole risk and loss were to be his own exclusively. Here the probable, if not the necessary, consequence of the carrying off of the city dam, by a flood, would be not only to sweep away the buildings and erections of all the owners of property upon the *Croton* below such dam, but also to endanger the lives of such owners and of their families. The dam should, therefore, have been constructed in such a manner as to resist such extraordinary floods as might have been reasonably expected occasionally to occur. And if the flood of 1841 was not much higher than any which had been known to occur upon this stream within the

memory of man, those who had charge of the construction of the dam should have anticipated such a flood; and should have provided a dam that would have been sufficient to resist the operation of that flood." "Although the flood of 1841 was not an ordinary one, I think the evidence of the plaintiffs was sufficient to authorize the jury to find that it was one of those occasional floods to which the *Croton* had sometimes been subject, and which should, therefore, have been provided against by those whose duty it was to guard against the probable consequence of such a flood. *C. Flemelling*, who lived upon the *Croton*, within two miles of the city dam, and was born there, testified that he had seen the river higher than in 1841, something more than twenty years previous to that time. He says nothing of the floods of 1837 and of 1839, as he was then in *Bedford*. But *Godney, Marshall*, and *Tompkins*, all of whom lived about two miles above the dam, thought, by the hight of the water upon *Elbow* island, that the same was as high in the flood of 1837 as in that of 1841; and, *Frost* and *Bailey*, jun., both testified that the floods of 1839 and of 1843, were nearly as great as in 1841. If the evidence given by these witnesses was to be credited, therefore, the flood of 1841 was an occurrence which ordinary care and prudence should have anticipated and guarded against."

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, &c.

*S. C. Stevens*, for the plaintiff.

*J. G. Marshall* and *J. Sullivan*, for the defendant.

(1) See *Ross* v. *The City of Madison*, 1 Carter's Ind. R. 281.—(2) Id.