## THE CITY OF BUFFALO *vs.* HOLLOWAY.

The doctrine of *respondeat superior* applies to those cases where the principal or superior has become liable, and been made to pay, on account of some carelessness, negligence, or improper conduct of the agent or servant; but is not applicable where the agent or servant has proceeded in all respects in accordance with the instructions received from the principal, or superior.

Where the defendant entered into a contract with the plaintiff, a municipal corporation, to construct a sewer in one of the public streets, and in the prosecution of such work, he excavated the earth in the middle of the street, leaving a deep pit or hole, into which a person passing along the street fell, and received injuries, for the want of lights, guards, or barriers about such pit or hole, and he sued the plaintiffs, and recovered a judgment for the damages sustained by him; *Held*, that the defendant was not liable to respond to the plaintiff for the amount of such judgment; it appearing that in the performance of the defendant's contract it became necessary for him to dig the pit in that place, and that he was guilty of no carelessness, negligence, or improper conduct in the method of digging it; and that he had made no agreement to erect barriers, or to indemnify the plaintiff.

In such a case, the corporation alone possessing the right to construct the sewer, and to dig the pit, is alone bound to protect the public from injury; and to compensate persons injured in consequence of its negligence.

THE complaint in this action stated that the common council of the city of Buffalo resolved that a sewer be constructed in Elk-street, in said city, from the Clark and Skinner canal to the canal slip near Louisiana-street. And the street commissioner of said city was, by such resolution, directed to contract with the defendant for the construction of said sewer, in accordance with the proposals for said work before reported to the common council. That such street commissioner did, in pursuance of such resolution, enter into a contract in behalf and as agent of the city, with the defendant, to construct said sewer. That the defendant entered upon the performance of said agreement, and the construction of such sewer. That Elk-street was a public street or highway in said city, and had been and was used as such for persons at all times to pass and re-pass along and upon, freely, at pleasure, on foot, and with carriages, horses and cattle. That the defendant, after he commenced the construction of said sewer, under said contract, and for the purpose of constructing the same, excavated the earth in and near the

middle of Elk-street, near the east end of the bridge over canal slip, in such manner as to make a deep pit or hole near the east end of said bridge, about twelve feet in length, along the middle of said Elk-street, and about four feet wide and about fifteen feet deep. That it then became, and was, and continued to be, the duty of the defendant, while the said pit or hole should remain open, to use due care, and to erect, maintain, and keep lights, guards, and barriers about and in the vicinity of said pit or hole, to prevent and protect persons, lawfully traveling and passing in, along, and upon said street, from and against unavoidably falling into said pit or hole. That the defendant neglected his duty in this behalf, and did not use due care, or erect, or maintain, or keep lights, guards, or barriers about or in the vicinity of said pit or hole, to prevent or protect persons, lawfully travelling and passing in, along, and upon said street, from and against unavoidably falling into said pit or hole. That while the said pit or hole was open, the defendant wrongfully, carelessly, negligently, and improperly left the same unguarded; and while the same was so left, one Agustus F. Tripp, while lawfully passing and going along and upon Elk-street, unavoidably fell into said pit or hole, by means of which he was injured and sustained damages. That he afterwards brought an action against the plaintiff for such injuries, and recovered a judgment therefor for one thousand dollars, and costs, which had since been paid by the plaintiff; and the plaintiff demanded judgment against the defendant for the amount of the judgment so paid. The defendant demurred to the complaint, and assigned the following causes of demurrer. First. That the facts in the complaint did not show any relation existing between the plaintiff and defendant, which made the defendant liable to the plaintiff for the claim therein demanded. Second. That the statement of facts, in the complaint set forth, did not establish any liability in favor of the plaintiff against the defendant. Third. That the statement of facts, in the complaint contained, did not make out a cause of action against the defendant.

Judgment was rendered upon the demurrer, at a special term,

for the plaintiff, and the defendant appealed to the general term from such judgment.

*C. O. Pool,* for the appellant.

*John Ganson,* for the respondent.

*By the Court,* TAGGART, J.   The main question which I propose to discuss in this case is, whether, upon the facts stated in the complaint, the defendant was under any legal obligation to indemnify the plaintiff against injuries arising from or occasioned by the pit in question.   The plaintiff does not complain that it was unnecessary or improper to dig the pit, or that it was not dug in a proper manner and in the proper place.   I infer from the complaint, that in the performance of the contract, entered into by the defendant with the plaintiff, to construct the sewer, it became necessary for the defendant to dig the pit in all respects as it was dug.   He is not, therefore, chargeable with any negligence in the manner of doing the work, or in doing work that it was unnecessary to perform.

The plaintiff alledges, that it became, and was, and continued to be the duty of the defendant, while said pit or hole should remain open, to use due care, and to erect, maintain, and keep lights, guards, and barriers about and in the vicinity of said pit or hole, to prevent and protect persons lawfully traveling and passing in, along and upon said street, from and against unavoidably falling into said pit or hole.   The question here arises, how did it become the defendant's duty to erect, maintain and keep lights, guards and barriers?   The pleader has not stated the facts constituting this conclusion, or from which it may be drawn.   If the duty was imposed by the contract, or the obligation arising out of that, the pleader should have set forth so much of the contract as contained the agreement on the part of the defendant to erect such lights, &c. ; a general averment that it was his duty to do so, is insufficient.   Such an averment is not a statement of facts, but is a legal conclusion arising from facts which are not stated.   The counsel for the plaintiff insists that

when the defendant entered into the contract, he became obli-
gated so to construct the sewer as to protect the plaintiff from
liability. If the plaintiff is right in this claim, the question still
recurs, was this obligation a part of, and contained in, the con-
tract? If so, it was a fact, and should have been stated in the
complaint. "The complaint shall contain a plain and concise
statement of the facts constituting a cause of action." (*Code,*
§ 141, *sub.* 2.) "When the plaintiff's right consists in an obli-
gation on the defendant to *observe some particular duty,* the
declaration must state the nature of such *duty,* which we have
seen may be founded either on a contract between the parties,
or on the obligation of law arising out of the defendant's partic-
ular character or situation." (1 *Chitty's Pl.* 370.)

As I have before remarked, if the obligation of the defendant
was founded on the *contract,* the pleader should have set forth
the contract, or so much thereof as contains such obligation.
The plaintiff not having done this, we must examine this case
to ascertain whether "the defendant's particular character or
situation" imposes upon him the obligation contended for. The
plaintiff insists that whenever the principal or master is com-
pelled to make compensation to a third person, resulting from
the carelessness or negligence of an agent or servant, the agent
or servant is liable to the master, on the principle of "respon-
deat superior." The case of *Inhabitants of Lowell* v. *The Bos-
ton and Lowell Railroad Corporation,* (23 *Pick.* 24,) is claimed
as sustaining this action, and as being in most respects like this.
The plaintiffs in that case were bound to keep the highway in
repair. The defendants, in constructing their railroad track
across the highway, made a deep cut. Barriers were placed
across the highway by the defendants, to prevent persons from
falling into the cut. Afterwards it became necessary for the
defendants to make use of the highway, for the purpose of re-
moving stones and rubbish from the deep cut; the barriers were
removed by workmen in their employ, who neglected to replace
them; in consequence of which, two persons driving along the
highway, in the night time, were precipitated into the deep cut,
and were greatly injured, and on account thereof recovered large

The City of Buffalo v. Holloway.

damages against the plaintiffs, which they had been compelled to pay. The amount so paid, they claimed the right to recover of the defendants, they having become liable by law to pay; and such liability having been incurred in consequence of the negligence of the defendants' agents. The section of the railroad where it crossed the highway, and where the deep cut was made, had been let out to one Noonan, who had contracted to make the same at a stipulated sum, and who employed the workmen. The plaintiffs recovered; and the court, in giving their opinion, say: "It is undoubtedly true that the defendants had a right to make the excavation in the highway, and they were not bound to erect barriers across the way, provided *they had given reasonable notice to the officers of the town of their intended excavation.* So after barriers were erected, the defendants might take them down from time to time, if necessary, for the purpose of removing rocks and rubbish, which could not otherwise be removed; these acts the defendants were authorized to do, and cannot be responsible to any one for consequential damages. But the plaintiffs' claim of indemnity is not for the damages arising from these acts; they do not controvert the defendants' right to make the excavation in the highway, or to take down the barriers when necessary. The action is founded on the negligence of the defendants' agents and servants, in not replacing the barriers when the work was left, the day before the accident happened. These barriers, although voluntarily erected by the defendants, were approved and adopted by the selectmen of the town; and if the defendants were under the necessity of removing them for the purpose of making use of the road, they were bound to replace them when the necessity of using the road ceased, or at least every evening, when their agents or laborers left the work. This was imperatively required by a due regard to public safety; otherwise an accident might happen before the *town had notice, actual or constructive,* and no one would be responsible for the damages." The case now under consideration is distinguishable from that in two respects. First. In that case the right of the defendants to cross the road and make the deep cut originated from an act to which the plain-

tiffs were not parties. It was a right granted or conferred by the supreme power, without the consent and perhaps against the will of the plaintiffs. The plaintiffs and defendants were strangers ; each had their appropriate·duties to perform, were subject to their appropriate liabilities and obligations, and each had their appropriate rights and interests. The action was sustainable on the ground that the defendant in availing itself of its appropriate rights had been guilty of negligence in so doing, by means of which negligence the plaintiffs had sustained damages. In this case the right of the defendant to make the sewer, and for that purpose to dig the pit, grew out of the authority conferred by the plaintiff. The plaintiff had its duties to perform, and was alone subject to the appropriate liability for non-performance of such duty. The plaintiff alone possessed the right to construct the sewer and to dig the pit, and was alone bound to protect the public from injury, and was alone liable to compensate the parties injured through its negligence. Second. In that case the defendants had erected the barriers, and such erection was acquiesced in and substantially adopted by the plaintiff. The defendant had thereby assumed the protection of the public from injuries occasioned by this cut. In this case the defendant never undertook in any way to erect the barriers. He neither contracted to erect them, in and by the agreement to construct the sewer, or by any other express contract. Nor did he impliedly contract to erect them and keep them so erected by erecting them himself. He did not, like the defendant in the case from Pickering, assume the protection of the public from injuries occasioned by the pit.

If we could stop here, there would be no difficulty in distinguishing this case from the case of *The Inhabitants of Lowell* v. *The Boston and Lowell Railroad Corporation*. There is however another aspect of that case, which it may be proper to examine. The court say, " The defendant's agent, who had the superintendence of their work, was the first and principal wrong-doer. It was his duty to see to it, that the barriers were put up when the work was left at night ; his omission to do it was gross negligence, and for this the defendants were clearly respon-

sible to the parties injured. From a view of the evidence reported, and the finding of the jury, we are to consider that the defendants' agents or servants were, while employed in the construction of the railroad, the principal if not the only actual delinquents, and that for their delinquency the defendants are responsible to all persons suffering damages thereby; and they in their turn may maintain an action for indemnity against their negligent agents or servants." Also, "But the defendants deny their responsibility for the negligence of the persons employed in the construction of that part of the railroad where the accident happened, because this section thereof had been let out to Noonan, who had contracted to make the same for a stipulated sum, and who employed the workmen. We do not, however, think that this circumstance relieves the defendants from their responsibility; the work was done for their benefit, under their authority, and by their direction." When the court say, "that the defendants' agent, who had the superintendence of their work, was the first and principal wrongdoer," it is evident they refer to the existing state of facts in the case. That such agent or contractor having, by once putting up the barriers, assumed the responsibility of keeping them up, he was bound to carry out his assumption, and was liable to respond to the injured parties, or to indemnify his principals against all damages he had so assumed to guard against. The court indeed refer to that assumption in saying, "It was his duty to see to it, that the barriers were put up when the *work was left at night ;* his omission to do it was gross negligence." The court seem in that case to place the liability of the defendants and their sub-contractor both, on the ground that by originally erecting the barriers they had assumed the responsibility of continuing them, although they might not otherwise have been liable. In this respect it may be likened to a promise to perform a service without consideration, or gratuitously. The promisor is not in such case bound to perform his promise, but if he commences the performance thereof and fail in such performance, or does it improperly, he is liable to an action. See also, as to this view of the case, *The Mayor of*

*New-York* v. *Furze*, (3 *Hill*, 612,) in opinion delivered by Chief Justice Nelson.

The remaining question, discussed in the case of *Inhabitants of Lowell* v. *The Boston and Lowell Railroad Corporation*, was fully discussed and decided in the case of *Bush* v. *Steinman*, (1 *Bos. & Pul.* 403.) In that case the defendants had contracted with A. to repair his house for a stipulated sum. A. contracted with B. to do the work, and B. contracted with C. to furnish the materials. The servant of C. brought a quantity of lime to the house and placed it in the road, by which the plaintiff's carriage was overturned, and it was held that the defendant was answerable for the damages. If the above case of *Bush* v. *Steinman* is law, it may be deemed an authority for the original liability of the plaintiff for the injury. Rooke, justice, says, "He who has work going on for his benefit, and on his own premises, must be civilly answerable for the acts of those whom he employs." Chief Justice Eyre cites the case of *Stein* v. *Cartwright*, (6 *Term. Rep.* 311,) and *Littledale* v. *Lord Lonsdale*, (2 *H. Bl.* 267, 299,) and says, "Lord Lonsdale's colliery was worked in such manner by his agents and servants (or possibly by his contractor, for that would have made no difference) that an injury was done to the plaintiff's horse, and his lordship was held responsible." Why? because the injury was done in the course of his working the colliery : whether he worked it by agents, by servants, or contractors, still it was his work ; and though another person might have contracted with him for the management of the whole concern, without his interference, yet the work being carried on for his benefit and on his property, all the persons employed must have been considered as his agents and servants, notwithstanding any such arrangement ; and he must have been responsible to all the world on the principle of *sic utere tuo ut alienum non lædas.*

The authorities on this subject are exceedingly contradictory, and it will be found that the case of *Bush* v. *Steinman* is much shaken, if not entirely overturned, so far as any authority can be drawn from it, for making the proprietor of property liable by reason of the negligence of a contractor. The case is only

The City of Buffalo *v.* Holloway.

to be sustained on the ground, that the owner of property is re-sponsible if he permits his property to be or remain in an im-proper condition, whereby another sustains an injury. In the case of *Ripson* v. *Cubitt*, (9 *Mees. & W.* 709,) the defendant, a builder, was employed by the committee of a club to execute certain alterations at the club house, including the preparation and fixing of gas fittings. He made a sub-contract with B., a gas fitter, to execute this part of the work. In the course of doing it, through B.'s negligence, the gas exploded and injured the plaintiff. Held, that the defendant was not liable in case for the injury. Lord Abinger, in giving the opinion in that case, says, "The injury was occasioned by the negligence of Bland, who did not stand in the relation of servant to the defendant, but was merely a sub-contractor with him, and to him the plaintiff must look for redress. I think the true principle of law, con-sistent with common sense, was laid down in the case of *Quar-man* v. *Burnett*, (6 *M. & W.* 499,) in which all the previous cases on this subject were cited and considered, and some dis-tinguished and some overruled. I have always been of that opinion, and therefore see no reason for departing from it." The counsel on the argument of that case cited *Randleson* v. *Murray*, (8 *Adol. & Ellis*, 109,) and *Bush* v. *Steinman;* and *Mathews* v. *The West Water Works Company*, (3 *Campbell*, 403,) in which case last cited it was held that an action might be maintained against the company, by an individual who, in passing along the street, had been injured by reason of the neg-ligence of workmen employed by persons who had contracted with the company to lay down water pipes. Parke, B. concurred in the decision, and says, "The true rule on this subject was laid down by this court in the case of *Quarman* v. *Burnett*, which is directly in point, and cannot be distinguished from the present case." He also refers to the above cases of *Bush* v. *Steinman*, and *Randleson* v. *Murray*, and others, and says, "But these cases are well distinguished by my brother Littledale in his very able judgment in *Laugher* v. *Pointer*, (5 *B. & C.* 547 and 8.") And again he says, "The case of *Quarman* v. *Bur-nett* has been approved of in its main principles by the court of

Queen's Bench, in the case of *Milligan* v. *Wedge*, (12 *Ad. & E.* 737.) The case of *Quarman* v. *Burnett*, above referred to, is as follows : " Where the owners of a carriage were in the habit of hiring horses from the same person to draw it for a day or a drive, and the owner of the horses provided a driver, through whose negligence an injury was done to a third party, it was held that the owners of the carriage were not liable to be sued for such injury ; and that it made no difference that the owners of the carriage had always been driven by the same driver, he being the only regular coachman in the employ of the owners of the horses, or that they had always paid them a fixed sum for each drive ; or that they had provided him with a livery, which he left at their house at the end of each drive, and that the injury in question was occasioned by his leaving the horses while so depositing the livery in their house." Parke, B. in deciding the case of *Quarman* v. *Burnett*, says, " It is true that there are cases, for instance, *Bush* v. *Steinman ; Sly* v. *Edgerly*, (6 *Esp.* 6,) and others, perhaps among them may be classed the recent case of *Randleson* v. *Murray*, in which the occupiers of land or buildings have been held responsible for acts of others than their servants done upon or near or in respect of their property. But these cases are well distinguished by my brother Littledale in his very able judgment in *Laugher* v. *Pointer*. The rule of law may be that where a man is possessed of fixed property, he must take care that his property is so used or managed that other persons are not injured ; and that whether his property be managed by his own immediate servants, or by contracting with them or their servants, such injuries are in the nature of nuisances ; but the same principle which applies to the personal occupation of land or houses, by a man or his family, does not apply to personal moveable chattels, which, in the ordinary conduct of the affairs of life, are entrusted to the care and management of others, who are not the servants of the owners, but who exercise employment on their own account, with respect to the care and management of the goods for any person who intrusts them with them. It is unnecessary to repeat at

The City of Buffalo *v.* Holloway.

length the reason given by my brother Littledale for this distinction, which appear to us to be quite satisfactory."

In the case of *Reedie* v. *The North Western Railway Co.*, and *Hobbit* v. *The Same*, (2 *Law Rep. N. S.* 626,) it is decided that "the owner of real property is not responsible for injuries to strangers, arising out of the way in which it was used by others who are not his servants, or part of his family, unless, perhaps, when the act done amounts to a nuisance, which he has not taken care to prevent, and which it was his duty to have prevented, whether done by his servants or not; and where a company empowered by act of parliament to make a railway, engaged with a contractor to construct a certain viaduct, parcel of it, and through the negligence of the workmen employed by the contractor, a stone fell on a man under the viaduct and killed him; it was held that the company were not liable to an action by his personal representatives; although, by the terms of the contract, the company reserved to themselves that incompetent workmen should not be employed by the contractor." In that case the court say: "But on full consideration, we have come to the conclusion that there is no such distinction, (between real property and moveable chattels,) unless, perhaps, in cases where the act complained of is such as to amount to a nuisance, and that in fact, according to the modern decisions, *Bush* v. *Steinman* must be taken not to be law, or at all events, that it cannot be supported on the ground on which the judgment of the court proceeded. It is not necessary to decide, whether in any case the owner of real property, such as land or houses, may be responsible for nuisances occasioned by the mode in which his property is used by others, not standing in the relation of servants to him, or part of his family. It may be that in some cases he is so responsible; but then his liability must be founded on the principle that he has not taken care to prevent the doing of acts which it was his duty to prevent, whether done by his servants or otherwise."

In the case of *The Mayor of New-York* v. *Bailey*, (2 *Denio*, 444,) the chancellor, in giving his opinion, speaking of the case of *Bush* v. *Steinman*, says, "The court of common pleas appears

to have based its decision in this case, upon the ground that the owner of the premises was answerable for the nuisance, which he had suffered to remain in front of his building, and between it and the middle of the highway, to which his premises presumptively extended. Rooke, justice, says a man who has work going on upon his premises, and for his own benefit, must be civilly answerable to those whom he employs; that it shall be intended by the court, he has control over those who work upon his premises, and he shall not be allowed to discharge himself from that intendment of law, by any act or contract of his own; that he ought to reserve such control, and if he deprives himself of it, the law will not permit him to take advantage of that circumstance, in order to screen himself from action. That principle applied to the present case, will render the corporation of the city of New-York liable for the improper construction of its Croton dam, by, or under the authority of the water commissioners for the benefit of, and on the premises owned by that corporation." And again he says, " If a dam which was a nuisance was allowed to be erected, and to remain upon the premises, the owner of such premises, the corporation of New-York, is properly answerable for the damages which others have sustained thereby. It is true the corporation had no control over the water commissioners, nor over the engineers or contractors employed by them. But the act of the legislature did not allow the water commissioners to go on with the work, at the risk and expense of the corporation, until the latter had instructed them to proceed. Such instruction having been given, however, the corporation, as owner of the premises on which the dam was erected and maintained, must be answerable if its dam which was subsequently erected, under the direction of those commissioners, became a nuisance, and produced injury to the owners of property on the stream below. Again, by the general principle of the common law, the owner or occupier of premises was liable for any nuisances upon such premises, on the ground that he was bound to control the use of his property, and to use it in such a manner as not to produce injury to others. And if the owner of land allows others to erect nuisances thereon, or

The City of Buffalo *v.* Holloway.

suffers his premises to be in such a situation as to produce injury to others, he is accountable for such injury." Again he says, "It is upon the ground that the dam was the property of the corporation, and that such corporation was legally bound to see that its corporate property was not used by any one, so as to become obnoxious to the occupiers of property on the river below, that the judgment in this case must be sustained, if it can be sustained at all."

The rule laid down by the chancellor, it seems to me from an examination of the cases, is the true and only safe rule. That in this class of cases, the doctrine of respondeat superior does not apply, and, although Senators Hand, Bockee and Barlow declared opinions in favor of affirmance, with the chancellor, on the ground that the water commissioners were substantially agents of the corporation, it is not thereby settled that such opinions establish the principle.

On the same principle, perhaps, the city of Buffalo were liable to Tripp for the damages sustained by him, in consequence of falling into the pit dug by the defendant. The pit, left as it was, perhaps became a nuisance, and the city thereby liable for injuries occasioned by it. But the liability of the defendant to indemnify the plaintiff, is an entirely different question. The plaintiff's liability arises, if at all, from its duty to keep the streets of the city in order; and it is of no importance, whether the defect in the public street arises from the plaintiff's act of itself, or its agents, or from the act of God. The street is in bad condition from some cause; it is the duty of the plaintiff to put it in order. A. sustains an injury, by means of which the plaintiff may be held liable. But the defendant has done no more than the contract between him and the plaintiff authorized, nay, required him to do. The plaintiff contracted with him to do precisely what he has done, and no more. He is then under no duty or obligation to the plaintiff. If the plaintiff desired that he should have erected barriers, and furnished lights, to guard against accidents, the obligation to do so should have been inserted in the contract. The doctrine of *respondeat superior* applies to those cases, where the principal or superior has be-

come liable, and made to pay on account of some *carelessness, negligence or improper conduct* of the agent or servant, and not where the agent or servant has proceeded in all respects in accordance with the instructions received from the principal or *superior.* In this case the defendant was guilty of no careless-ness, negligence or improper conduct, and having made no agree-ment to indemnify the plaintiff, the action against him cannnot be sustained. I think, therefore, the judgment of the court at special term should be reversed, with costs, and judgment for the defendant on the demurrer, with leave to the plaintiff to amend, on payment of costs, should be rendered.(*a*)

[ERIE GENERAL TERM, June 26, 1852. *Taggart, Marvin, Hoyt* and *Mullett,* Justices.

(*a*) Affirmed in court of appeals, December, 1852.