The common council of Buffalo determined to cause Green-street to be graded and paved; but, instead of causing the expense of the work, and the damages, which individual owners of lots on the street might suffer, to be assessed at the same time by one set of assessors, they first appointed assessors to assess the expense of the improvement upon the owners chargeable on account of benefit; and, after they had made their report, another set were appointed to assess upon the parties so chargeable, the damages which owners of lots injured by the change of grade might sustain. To give color to the last proceeding, the council passed a resolution defining or "fixing" the grade by a particular statement of the inclination which the street, when finished, should assume. The grade should have been, and probably was, determined upon when the expense of the work was estimated, before the first set of assessors were put in motion; for it would be impossible to ascertain the cost of the work without deciding upon the shape of the street and reckoning the amount of excavation and embankment. The resolution describing the grade after the first assessment was made, appears to have been essentially a fictitious proceeding, and of no legal import. I am of opinion that the charter did not contemplate and does not warrant this double proceeding. When a street is to be graded and paved, the council is to determine the manner in which the work is to be done, including the necessary direction as to the grade or level which it is to assume. They are then to estimate the expense, and appoint assessors to apportion that expense, together with such *Page 521 
claims for damages, for injury to individual property owners, as they shall allow, among the proprietors of lots whom they shall consider benefited. This is the plain meaning of the eleventh, twelfth and thirteenth sections of the sixth title of the charter. The contrary course pursued by the common council in this instance, not only occasions increased expense, but it commits to two different boards the performance of a duty which does not well admit of a division, and which the law therefore required should be the work of a single administrative body. I therefore agree in opinion with the Superior Court, that the last assessment was illegal and void, and that the act of taking the plaintiffs' property to satisfy the award against them was a trespass.
The next question is whether the city corporation is liable in a common law action for this trespass committed by its officers; and I am of opinion that it is not liable. Municipal corporations are organized for the purpose of carrying on the local government of the districts over which their powers extend. They are made bodies politic for the purpose of taking and transmitting the title to property, of maintaining a standing in court in order to vindicate the title to, and protect from injury, the public property committed to their charge, and that they may become parties to contracts respecting the public business which they are authorized to carry on. The officers of municipal corporations are public officers, in the same sense with other functionaries who are entrusted with public duties in districts which are unincorporated. They are all officers of the government, with powers more or less extensive as regards territory and the character of their duties. There is no reason why the people of an incorporated city or village should be responsible for the unlawful acts of their officers, which does not apply with the same force to the public in a locality not embraced within the boundaries of a municipal corporation. The general rule certainly is, that the individual who commits *Page 522 
the illegal act is to respond to the party aggrieved, though it be done under color of official authority and upon pretence of law. For the negligent performance of an act which the officer has authority to do, the community which he represents may be, and in certain cases is, liable; but where the officer so far departs from his duty that the law adjudges the whole act void, the individual, and not the community, should answer. The Superior Court must have adjudged, in sustaining the action, that the assessment for which the plaintiffs' property was taken was entirely void; yet they determined at the same time that it possessed so much legal validity that it concluded the corporate body in whose name it was done. These two propositions cannot, in my opinion, be reconciled with each other. If void, it was not a public or a corporate act. It was the deed of individuals professing and probably believing that they acted by the authority of law, but in truth proceeding upon their own responsibility, without any lawful authority whatever. As they were acting without the scope of their public agency, this concluded nobody but themselves. The case is plainly distinguishable from the class of adjudications to which TheMayor, c., of New-York v. Furze (3 Hill, 612) and Bailey
v. The Mayor, c., of New-York (3 Hill, 531, affirmed in 2Denio, 433) belong. In these cases the injury to individuals was committed in the course of the performance of a public act. They are distinguishable, upon the same principle, from Hickok
v. The Trustees of the Village of Plattsburgh and King v.The City of Buffalo, lately decided in this court. In the last of these cases, though the process upon which the plaintiffs' property was taken was coram non judice and void, it was notwithstanding held that the city, at the instance of whose officers it was sued out, was responsible, for the reason that it was intermediate process taken out in the course of a prosecution legally carried on in the name of the city corporation by its officers; and it was therefore held that the case was not within the principle *Page 523 
which I have undertaken to maintain. I think the Superior Court fell into an error, in the case under review, in holding the corporation responsible for the trespass of its officers.
I am also of opinion that the case, if otherwise sustainable, was within the provisions of the charter of 1853, which requires demands or claims against the city to be presented to the council for audit or allowance before an action can be maintained upon them. The case is within the policy of the provision, for it is at least as reasonable that the local legislature should have an opportunity to adjust a demand arising in tort as one growing out of an express or implied contract. It is also within the words of the statute. "Demands or claims" are the largest words of that class, and clearly embrace a cause of action founded upon a trespass to personal property. LITTLETON says that the most beneficial release which a man can have is a release from all demands (§ 508); and Lord COKE declares that a release of all claims extends to all demands (Co. Litt., 291, b). Again, the language of the section shows that demands arising out of a tort were intended to be embraced. All claims and demands against the city are to be presented to the council, and, "if on contract," there must also be an affidavit; plainly showing that other demands than such as arose upon a contract were in the contemplation of the legislature. If the provision had made the common council the ultimate judge whether the claim should be allowed it would be liable to the constitutional objection that the party was deprived of his right to a trial by jury; and so if the condition to the maintaining of the action were such as substantially to destroy his legal remedy at common law. (Morse
v. Goold, 1 Kern., 281.) The requirement to present the demand to the common council, and to wait a sufficient time to enable the council to examine into its justice, would not seriously embarrass a party. *Page 524 
These views, if correct, would lead to the reversal of the judgment of the Superior Court, and to the awarding of a new trial.
Judgment affirmed.