## HANCOCK v. McFARLAND.

1. **Contract:** CONSTRUCTION. The plaintiff agreed with the defendant "to construct a coffer-dam sufficient to turn the water of the river into the mill-race within one week from May 14th, 1862 (if the weather possibly permits), so as to allow the mill to run." In reference to the amount and mode of payment, the contract contained the following stipulation: "One hundred dollars thereof payable when the coffer-dam is finished and the water of the river effectually turned into the mill-race, so as to permit the mill being run." *Held*, that it was not necessary to build a dam sufficient to resist an unusual rise in the stream; that a dam which so turned the water that the mill could be used, was a compliance with the requirements of the contract, and that the burden of showing such a compliance was on the plaintiff.

2. —— DEFENSE. Where the plaintiff, in the partial performance of a contract to construct a mill-dam constructed a coffer-dam for temporary use, while the main dam was being constructed, which coffer-dam was carried away by a freshet, after which the plaintiff constructed a second coffer-dam under a special contract with the defendant, it was *Held*, that the special contract was supported by a sufficient consideration, even though the first coffer-dam was not constructed in compliance with the terms of the contract; that any insufficiency in the performance of the first contract did not affect the validity of the second.

*Appeal from Dubuque District Court.*

WEDNESDAY, OCTOBER 12.

CONSTRUCTION OF CONTRACT — CONSIDERATION.   By written contract, the defendant agreed with the plaintiff to erect a main dam in place of an old one washed away; to repair race, head gates and wing planking of embankment, and to erect what is styled a coffer-dam, all for the sum of $1,000; of which $100 was payable when the coffer-dam was finished, and the balance as the work progressed and when completed.   The plaintiff brought this action to recover under the contract and for extra work.   He had been paid $500, and obtained a verdict for $500 more. The only questions made in the case, relate to the coffer-dam, and involve the construction of the contract and the correctness of the directions to the jury in this regard.   It is necessary to state the provisions of the contract, the pleadings and instructions, in order to understand the questions raised.   In that part of the contract which relates to the work which the plaintiff engaged to do, and the manner of doing it, the plaintiff agreed " to construct a coffer-dam sufficient to turn the water of the river into the mill race within one week" from May 14th, 1862 ("if the weather possibly permits), so as to allow the mill to run." In that part of the contract relating to the amount and mode of payment, was the following further stipulation : " One hundred dollars thereof, payable when the coffer-dam is finished, and the water of the river turned effectually into the mill-race, so as to permit of the mill being run."   In the first count of his petition, the plaintiff alleged that he " completed the said coffer-dam on the 24th day of May last (1862), and the main dam on the 26th day of September," 1862, in all respects in accordance with the contract, except in one particular, as respects the main dam, to which deviation defendant assented.   In the *second* count,

the plaintiff alleged that the coffer-dam so built, "was carried away by a freshet on the 31st day of May, 1862, and that he, at the special request of defendant, constructed, and by the 16th day of June, 1862, completed, a second coffer-dam in the same place, for which defendant agreed, to pay him fifty dollars," and for which *inter alia*, the action is brought. As to the first count, the defense consisted of a denial, except as to certain specific admissions. As to the second count, an averment of want of information or knowledge sufficient to form a belief; also an averment "that the dam first erected, was totally unfit for the purpose for which it was intended, and  as carried away, not because of the freshet, but because of the faultiness of its construction, and its total inability to subserve the purpose of the contract." Upon these issues the trial was had. The instructions complained of will be referred to in the opinion. Defendant appeals.

*J. M. Griffith* and *W. J. Knight* for appellant.

*John L. Harvey* and *James S. Gadsden* for appellee.

DILLON J. — I. The chief provisions of the contract relate to the main and permanent dam. From the smallness of the price to be paid; from the want of specification, in the contract, as to materials out of which, and the mode in which the coffer-dam was to be constructed; from the limited time — one week — allowed for its erection and completion, it is quite obvious that it was an improvised or temporary structure, probably designed to allow the mill to be run, pending the construction of the dam proper. The principal question, on the trial, as to the first coffer-dam, was whether it was carried away "because of the freshet, or because of the faultiness of its construction," the plaintiff maintaining the first, and the defendant the second theory. This coffer-dam may be

*1. CON-TRACT: construc-tion.*

contemplated under two aspects: first, was it constructed with reasonable skill, considering its nature, purpose and location; or, in other words, was it swept away by reason of its defective construction, or in consequence of an unusual freshet? and second, was it sufficient as respect the *object* designed, viz.: *so* to turn the water "as to allow the mill to be run?" The defendant, in his argument in this court, complains that the District Court "carried the idea to the jury that if the dam actually turned the water at all, for any time, it complied with the contract." "That the only thing the jury could, or did pass on, under the rulings c̄ ̄e court, was whether, *for any time*, the dam *actually* turned the water. The question whether it was *sufficient and effectual* for that purpose, *as required by the contract*, was not passed on by them at all."

After a careful examination of the whole charge of the court, (for it is to be considered as a whole, and not to be anatomized and dismembered;) and looking at its obvious meaning as plain jurymen would look at it, and not as might be *made* to look, by the keen and critical intellect of a skillful lawyer, we do not think it justly obnoxious to objections made against it. The court charged the jury as follows: "The burden of proof rests upon the plaintiff, to sustain by sufficient testimony the performance of the contract on his part. It is your duty to examine this testimony, and say whether he has established this fact. And in examining this fact, you will, in the first place, inquire whether he built a sufficient coffer-dam, as provided in the contract, to answer the purpose contemplated by the parties at the time of making the contract. If you find it was sufficient for, and did in fact turn the stream into the race, so as to supply the mill in the usual stage of water in the stream, it was sufficient to comply with the contract," (that is, as to the *object* designed, viz.: "so as to permit the mill being run,") "and it was not necessary to have been so

constructed as to resist an unusual rise in the stream." The defendant asked the court to charge the jury thus: "You will inquire whether it was such a structure as any reasonable man, with such mechanical knowledge as the plaintiff is shown to possess, would erect for the purpose for which it was intended, for if it was not, it could not be deemed a compliance with the contract" — which the court gave, but with this qualification: "provided, however, that he was not bound by his contract to build it so as to stand against unusual freshets in the stream, and if you find it did effectually turn the water, and thus stood until it was carried away by an unusual rise of water in the river, then it is a compliance with the contract." The defendant excepted to the qualification annexed by the court. If the last clause of the last sentence stood alone, and was the only instruction of the court, it would be objectionable. But a fair construction of the whole charge is this: First, The burden of proof is on the plaintiff to prove that he built a sufficient cofferdam, as provided by the contract, and as contemplated by the parties. Second, If *such* a dam was built, it is sufficient, though it would not resist an *unusual freshet*, that is, one happening of which could not reasonably have been anticipated. And this, we think, was clearly correct. (*The Mayor, &c.* v. *Bailey*, 2 Denio, 433.) We prefer the manner in which the court put the case to the jury, to the manner in which counsel asked it to be done. The court kept in view the contract of the parties, and directed the jury to "inquire whether plaintiff built a sufficient cofferdam, as provided *in the contract*, to answer the purpose contemplated by the parties at the time of making the contract." The defendant's instruction, while not objectionable, makes compliance depend rather upon the question whether the plaintiff reasonably exercised his skill as a mechanic, than upon the question whether the dam was sufficient under the contract. Great stress is laid, by the appellant,

upon the word "*effectual*," in the contract.   In common use, it is almost equivalent to the word *sufficient*, and in this contract the two words are substantially synonymous.   If the defendant intends to argue that, by the use of the word *effectual*, the plaintiff would be bound to construct a dam which would resist freshets unusual upon the stream in question, we cannot accede to the correctness of his construction.

II. In the second count of his petition, the plaintiff claimed, as we have seen, fifty dollars, as per special contract with the defendant, for the erection, at his instance, of a *second* coffer-dam in the place of the one washed out.   By recurring to the statement, it will be seen that the defense to this claim was not, as argued by the plaintiff's counsel, a simple denial.   On the contrary, it was especially alleged that "the first dam was unfit for the purpose intended, and was carried away, not because of the freshet, but because of the faultiness of its construction," &c.   As to the plaintiff's claim for fifty dollars for building the *second* dam, the defendant prayed this instruction: "If you find, under the instructions given you herein, on the first count of said petition, that the first coffer-dam was insufficient, and not fit for the purpose intended; that is, effectually to turn the water into the race, so that the mill could be run, then it was plaintiff's duty to replace it when carried away, and the plaintiff cannot recover, on said second count of his petition," to which the court added, "provided, however, you find that the second coffer-dam was put in under a special contract, and for a specific price agreed to be paid therefor, by the defendant, then the plaintiff can recover such compensation."   The defendant excepted to the qualification.   He argues that if the first dam was defective and insufficient, that it was the *duty* of the plaintiff to put up another, and that if the defendant promised to pay for it, the promise is *nudum pactum.*   We admit his propositions of law,

*2. —— Defense, etc.*

Hancock v. McFarland.

1st. That every promise relied on as a ground of recovery, must be supported by a consideration; and, 2d. That a promise to pay for that which the promisee was under a legal obligation to do, and which it was his *duty* to do without any such promise, will not make the promisor legally liable. These, though *differently stated*, are the principles which appellant contends were involved in his instruction, and which the court refused to give without a qualification, which amounted to a virtual refusal to give them to the jury. But we must not *misapply* admitted principles to the facts of the case in hand. The principle insisted on, does not apply. If the first dam was insufficient, the plaintiff would be liable in damages. It would not be his *duty* to *replace* it by a second dam, in such a sense as to preclude recovery on an express promise to pay for the second dam. The qualification annexed by the court was entirely proper. Let us also suggest another view, as supporting the action of the court: "If you find," says the instruction which the defendant asked, "under the instructions given you herein, on the first count of the petition that the *first* coffer-dam was insufficient, and not fit for the purpose intended," &c., then what? It would have been the duty of the jury, and one which we are bound to suppose they performed, to disallow the plaintiff for building the first coffer-dam. But if the *second* dam was sufficient, and fit for the purpose intended, and the plaintiff had been disallowed compensation for the first one, should he not be paid for the second the agreed price of fifty dollars? To have given the instruction as asked, would have been to have denied the plaintiff the right to compensation for either dam, though the second dam was built under a special contract, for a specific price, and complied in all respects with that contract; such cannot be, and is not the law. We perceive no error in the action of the court, and the judgment is                                   Affirmed.