Monell, Ch. J.
(dissenting).—The board of education, created by the act of 1854, was a corporation capable of suing and being sued in respect to its contracts and acts ; and had it remained in existence at the time of the happening of the injury complained of in this case, the action would have been properly against it. But it having ceased to exist before the injury, and no right of action having been reserved, the responsibility must fall upon some other body or persons.
*470 Upon the organization of the department of public-instruction, under the act of 1871, it having been clothed with the powers and duties of the former board, that body, if it was capable of being sued, would have been the proper defendant in the action." It having succeeded to, assumed the contracts, and taken possession of, the property of the former board, could be held for any injury sustained by its fault, or that of its employees or others acting under its authority.
It is not, however, claimed that the department of public instruction is a corporate body; or is capable of being sued, either upon its contracts, express or implied, or for any of its acts ; or that, as a body, it can incur any liability whatever. Although vested with the same powers, and charged with the same duties as the board of education, it is not, as was that board, declared to “ possess the powers and privileges of a corporalion.” And although the powers it possesses, include the taking and holding of property, real and personal, and the making of various contracts in respect' to such property, and for educational purposes, within the scope of the law, yet all these do not . confer corporate powers- upon the department, or render it a corporation de facto or sub modo (Clarrisy v. Met. Fire Dept. 1 Sweeney, 224; S. C. 7 Abb. Pr. [N. S.] 552). In Gardner v. The Board of Health, 4 Sandf. 153, the action was to recover for services performed under the employment of the board; and Ch. J. Oakley said; “We can not find that this board is anywhere created a body corporate by express terms of law, nor can we perceive that it has any of the features of a corporate body. It has no succession, no seal, and no funds. It is organized by the city corporation under the laws of the state.”
But the question is not properly whether the department of public instruction can be sued, but *471 whether the defendant can be held responsible in this case, and that is a question of some difficulty.
To accomplish that result, it must be determined that the municipal corporation is bound for the contracts and acts of the department of public instruction.
The act already referred to, of 1871, is amendatory of an act passed in 1870, to reorganize the local government (and is commonly known as the charter) of the city of New York. That act (Sess. Laws, 1870, ch. 137, § 1), declares and provides, that “the corporation now existing and known by the name of ‘The Mayor, &c., of the city of New York,’ shall continue to be a body politic and corporate.” The act then defines the legislative and executive power! of the corporation; and creates certain co-ordinate city departments, such as finance, police, public works, parks, charities and corrections, buildings, docks, fire, health, &c., and prescribes the mode of appointment, powers and duties of each.
Each department was given power to appoint chiefs of bureaus, clerks, officers, employees ■ and subordinates ; and, under certain specified instructions, to make all contracts in respect to the objects and duties of the departments.
The department of public instruction was not then created; nor did the act abolish the board of education.
. The act was amended in 1871, and provided that there should be “in the government of the city of New York' an additional department, to be called the department of public instruction.”
It is evident, I think, that in enacting the charter of 1870, it was intended to bring back to the city its former powers of local government. Prior to that time the city, to a large extent, was governed by commissions created by the legislature, which were not amenable to any power emanating from the people *472 .over which the commissioners exercised their functions.
The act of 1870 conferred upon the mayor the appointment of all heads of departments. That officer was elected by, and became the representative of a constituency over and fur which the several departments discharged their duties. And provision was, made for removal of officers so appointed, by a local authority designated in the act.
It will be seen, therefore, that the provisions of the-act carry into effect the declared purpose of its title-“to reorganize the local government of the city.” The mayor, proceeding directly from the people, could be held responsible to the people, if, in exercising bis appointing power, he failed in his duty.
The several departments thus became a part of the-local government, and were made the instruments 'for executing the various functions of the corporate body, designated as the mayor, alderman and commonalty of the city.
Although in executing such functions each department, within its sphere, had certain discretionary powers, and could not be controlled by either the-legislative or executive power, they,, nevertheless, acted for and on behalf of the local government, and became its agents in -the discharge of all their duties.. They could contract for. work or supplies, only under-such regulations ■ as should be established by ordinances of the common council;, and were prohibited from incurring any expense, unless an appropriation had previously been made covering it.
: By other provisions (§§ 102, 103) the common council is authorized to enact such necessary ordinances as-may be required for the “fuller organization, perfecting and carrying out of the powers and duties prescribed to any department.” And it is made the duty; of the common council to provide for the accounts, *473 bility of all officers and others entrusted with the receipt or expenditure of moneys.
From these and other provisions of the act of 1870, as well as from its entire scope and purpose, it is evident that it was intended to render the several departments in the city government the • instruments for executing the functions of the corporate body. And, although each department is independent of all other departments, they are all in some measure made subordinate to the corporation irseif. The expenses are defrayed by the city ; and although contracts may be entered into by heads of departments, they, in most cases, must be first authorized by resolution or ordinance of the common council, and in practice it is understood ■ they are always made in the name of the corporation, and not of a department.
The amendatory act of 1871 provides, that section 100 of the act of 1870, shall come under article “Fifteen,” and shall read as follows, &c.
The amendment is thus placed before the sections containing the “general provisions, powers and limitations,” applicable to all the departments, to some of which I have already alluded.
No greater or less force, therefore, can be given to the amendment than it would have had, had it originally been incorporated into the charter of 1870. Nor can it be seen, that the department created by it, holds an attitude, in any respect different, from the remaining departments of the city. None of them are constituted corporate bodies, nor made capable of suing or being sued. They are mere arms of the corporate body, the mayor, &c., acting in behalf and for it; and as such arms, derive their sustenance and support from the parent stock.
. It can not, I think, be seriously questioned, that the heads of the several departments, in the local' government, are corporate officers, and that as such,' *474 for acts within the line of their duties, the political body is liable in an action. They are the agents of the municipality for whose acts the principal is liable.
Hence it follows, that if otherwise the corporation of the city can be held liable, it can not escape on the ground, that as between it and the department of public instruction, the relation of principal and agent does not exist.
The case of Bailey v. Mayor, &c. (3 Hill, 531), supports this view.
The action was for injuries caused by the negligent and unskillful construction of a dam on the Croton river, which had been constructed pursuant to an act of the legislature for supplying the city with water, and had been built by persons employed for the purpose under a contract with water commissioners appointed by the governor. It was held that the commissioners, though appointed by the state, were the agents of the corporation, and that the latter was therefore liable. The court, after combatting the position, that because the commissioners were appointed by the state, and the defendants had no direction or control over their conduct, the defendants could not be held liable, proceed to say, that the defendants are to be regarded as a private company, upon whom special franchises have been conferred for their own private advantage. By accepting the charter, the defendants-adopted the commissioners as. their own agents to carry on the work. The court of errors affirmed the judgment (2 Denio, 433). The chancellor placed his affirmance chiefly, if not wholly,on the ground that the dam was the property of the corporation, and that it was legally bound to see that its corporate property was not used by any one, so as to become noxious to. the occupiers of property on the river below. But several senators followed and adopted the views1 of the *475 ‘court below, that the commissioners were the agents of fthe corporation.
I am aware that the force of that decision is weakened by the comments upon it by Denio, Ch. J., in Darlington v. Mayor, &c. (31 N. Y. 164, 198).
The position, however, of the department of public instruction, towards the city, is different from that which the croton commissioners occupied. The department is a part of the municipal government. Its functions are discharged by persons appointed by such 'government, whereby they become officers of the corporation, and, as such, its agents, within the line of their duties.
; Besides, even if we take the- chancellor’s ground, that the liability attached because the corporation -owned the property, the authority of Bailey v. Mayor, &c. (sup.), will be recognized. The title to all property used by any department of the city government, is in ■the city, and not in the department. So all leases, if not nominally, are in effect to the corporation, and the leasehold interest is the property of the city.
' When the lease in question was taken, the board of education existed ; and being itself a corporation, the lease was properly in its -name. But in creating the department of public -instruction, and conferring upon ft the powers and duties of the former school board, the' legislature, instead of making it a corporation, made it a “ department in the city government,” to assist in discharging one of -its functions. So that, when the board of education was abolished, and the present department established in its place, all property and leases were, ex vi leges, transferred ■ to and became vested, not in such department, but in the corporation of New York, .....
-. Having found, therefore,- that the department- of public instruction is a part of the city government, and not an individual, and independent- corporation, it *476 follows, that the responsibility for the contracts and acts of such department, must rest upon the corporate body.
The question is not embarrased by those cases which hold, that municipal corporations are not liable for the misfeasance or non-feasance of its officers, in respect to duties specifically imposed by statute on siich officers (Martin v. Mayor, 1 Hill, 545 ; Lorillard Town of Monroe, 11 N. Y. 392); nor when the officers are not appointed by them, although performing certain duties for them, under the. law for which they were appointed (Bank of Commonwealth v. Mayor, 43 N. Y. 184).
The liability in this case does not arise from-any misfeasance or non-feasance of the department of public instruction or of any of its officers, but for a neglect on the part of the corporation to reconstruct or repair certain water apparatus, which had previously been imperfectly constructed and put into a building which afterwards came into the possession of the city, and which defective and imperfect water apparatus, was continued to be used by or under the authority of the city.
Such a liability is directly within the case of Bailey v. Mayor, &c. (supra), which, upon the point of responsibility for negligence in the construction, and, therefore, in the continuance, of a dam, by which an injury was caused, has not since been criticised or questioned, and upon which the court of errors was unanimous.
The charge to the jury was, that if the city had succeeded to all. the rights, duties and obligations of the board of education, the original lessees of the premises, and under whose authority and direction the water apparatus had been constructed, that the city could be held for injuries caused by the continued use of such apparatus ; and for the purposes of the trial *477 the jury were charged, that the, corporation had succeeded. to such rights, duties and obligations.
This, as a proposition of law, I am of the opinion is correct.
But it remains to be seen whether upon the facts a liability is shown.
There was, perhaps, a little obscurity on the trial in separating the liability, arising from defects in construction, and such as might arise, from afterwards using or maintaining the defective apparatus. For the former, very clearly, the board of education alone was liable, and. the defendants could not be held. But the theory, fairly deducible from, and supported by the evidence, was, that the defendants, having through its department of public instruction, succeeded to the powers, and being required to discharge the duties of the former board, were responsible for injuries occurring d uring their use or maintenance of the defective apparatus.
Upon the organization of the department of public instruction, it continued in the possession of the premises in question, under the lease to the former board ; and also in the use of the water, water-closets, basins, &c., which had theretofore been put into the building, by such former board; and the learned justice limited the recovery to damages occurring af ter such department so took possession ; and instructed the jury that the defendants were liable therefor, if caused by the negligence of the persons employed by that department.
Upon principle, a person maintaining or continuing the exclusive use of an insufficient or defective apparatus, which had previously been put into a building occupied partly by such person, and partly by other persons, must be held liable for all injury caused by the use of such defective apparatus. Such person may refuse or omit to use the apparatus, and in that *478 case could not be held responsible for injuries resulting from any mere defects of construction. But if he, or ¡those under him, or acting by his authority, does use the apparatus, the law will charge him with maintaining it, and render him liable for the consequences.
In Irvin v. Wood (4 Robt. 138, and see S. C. on second appeal, 5 Robt. 482, and affirmance by court of appeals, 51 N. Y. 224), the action was against the ¡tenant of a building to which a coal slide in the side•walk was an appurtenant, and which was used by .the ¡tenant. It had been constructed by the landlord. .The court held, that as the opening in the street was a public nuisance, the use of it, by the tenant, was the maintaining or continuing of a public nuisance, and the action would lie against him, for an injury caused by 'the opening being there.
It may be said of the case cited, that the tenant was ¡there charged with continuing a public nuisance. But there is no difference in principle between that case and oné where a tenant continues to use a defective or imperfect water fixture, which causes, by. its use, an injury to another. The using is essentially the same, and the liability should also be the same.
It is essential, however, that to create a liability in a person, succeeding to the occupancy of a building containing such defective or insufficient apparatus, that be should do or omit to do some act causing the injury. If he does not maintain or use it, he is not responsible for its defective construction. ' But if he does use it, he is required to ascertain if it is suitable 'and safe, and not liable to inflict injury upon others. Nor is it required that he should have actual notice óf Its insecurity. He is bound to examine and ascertain . if it is safe, and he will use it at his peril, if it is unsafe and insecure. . '
In Irvin v. Wood (supra), the court say (p. 143), that V neither the fact that they had no notice of thé condi *479 tio'n of the nuisance, or the fact that they were under no obligation to repair, will relieve them of their liability.”
And this rule, as to notice, applies equally to municipal corporations. In McCarthy v. City of Syracuse (46 N. Y. 194), the action was for injury caused by ¿ defective sewer, and it was held that the city was bound to keep the sewer in good condition, and that no notice was necessary. It was found as a fact that the. defect might have been discovered on inspection, and that the city was negligent in permitting the same to .become out of repair.
This seems to be carrying the duties and obligations of a tenant to a great length. But it is obvious that the security of tenants of other portions of the same premises, requires that the use of insufficient and unsafe apparatus, should not be allowed to cause them an injury, without redress.
The defendants were in possession of the premises, and the water apparatus was used by their authority, and if the plaintiff’s property was damaged by such use, the defendants must be held to be responsible for the injury.
■ And this presents these questions upon the evidence.
Bid the defendants use the apparatus % And was the injury caused by such use? And this involves somewhat the question of the burden of proof.
In cases of injury through the erection or continuance of a public nuisance, the question of negligence does not arise (Irvin v. Wood, supra, and Congreve v. Mason, 18 N. Y. 84). The erection being in itself unlawful, the liability arises from the fact of its being unsafe, and not from a negligent use of it. But that extreme rule can not apply to a lawful erection. In the latter case, not the thing itself, but the use of it, must be the direct cause of the damage. This distinq *480 tion is clearly recognized in Eakin v. Brown (1 E. D. Smith, 36), where the court say: “ As betwreen defendant and tenant, under a common landlord, the question is always one of negligence in the use of the premises.”
But the burden of proof is upon the plaintiff. If the apparatus was properly and sufficiently constructed, it was lawful to use it, and the defendant can be charged only with negligence in its use. Or if it was imperfect and defective to an extent, rendering its continuance or use unsafe, the defendant must be charged with the consequences of such continuance or use.
In either case the burden rests upon the plaintiff to show the facts constituting the liability.
Was enough shown to sustain the verdict?
There was no direct evidence of negligence by the defendants, or those under them, in the use of the water apparatus. Indeed there was no direct evidence that they had used it at all. But the prooLwas abundant that the apparatus was in the part of the building occupied by the defendants, and had been put there by those whom the defendants had succeeded. It was 'proved that the water flowed from such part of the building into and upon the part occupied by the plaintiff ; and some of the witnesses testified that they had examined and seen the flow coming from such apparatus.
Had there been no other proof, the plaintiff would have failed to establish the defendants’ negligi-nce. But in connection with that proof, the plaintiff showed that the apparatus was defective, insecure and insufficient to prevent, when used, the flow of water from it, such as was alleged and proven to have comé from it, and which damaged the plaintiff’s property.
In Eakin v. Brown (supra), the court say: “This negligence may consist in the careless use of well- *481 constructed apparatus, and it may as well consist in the use of apparatus which the tenant Jcnew, or Jiad reason to Jcnow, was, in a condition unfit for use."
There was sufficient evidence, therefore, I think, to authorize the jury to find that the apparatus was in a “ condition unfit for use ; ” that it was used by the defendants, or under their authority, and that the flow of water was from its defective and insufficient condition. And such evidence established the negligence of the defendants.
The case was, therefore, given to the jury upon the proper theory.
In passing upon the main questions in the case, I have necessarily covered and disposed of the grounds for the motion to dismiss the complaint, and of the first, second, third and fourth requests of the defendants. to charge the jury, as well as the principal exceptions to the charge itself.
The other requests to charge, namely, the fifth, relating to the question of damages, and the sixth to the burden of proof, were substantially charged.
The grounds upon which I have placed my opinion sustaining the verdict in this Case, are broader, and perhaps somewhat different from those adopted at the trial.
In the charge the jury were instructed that the defendants were liable for the negligence of the employees of the department of public instruction ; and- it was left to them to find the evidence to support the proposition. ,
I have not found any evidence* however, which could support it; and if there was no other principle of law to uphold the judgment, we should be obliged to reverse it. But as I have endeavored to show that as the corporation of the city of New York succeeded, through the department of public instruction, to the powers and duties of the former board, and continued *482 thereafter in the use of the defective apparatus, by its employees and others under its authority, it became liable for injuries caused by such use, independently of any negligence of such employees or other persons.
If I am right in that conclusion, there was sufficient evidence to sustain it; and the judgment should not be set aside, merely because the action was tried, and, perhaps, submitted to the jury, upon an erroneous theory.
There were some objections to the evidence which I have examined. • But I do not find any error in' the rulings upon them at the trial.
- The exceptions should be overruled, and judgment ordered for the plaintiff on the verdict.